McCALEB, Justice.
 

 The Legislature of 1940, by Act 13 thereof, created a commission known as the “Crime Commission” to investigate all of the governmental departments, commissions, boards and subdivisions of the State of Louisiana. According to the preamble to the act, this Commission was appointed to investigate astounding and widespread corruption in the administration of the governmental affairs of the State which had resulted in serious loss and shocked the moral conscience of the people, and the Legislature felt that it was necessary that it be informed as to all of the facts in order for it to intelligently enact appropriate remedial legislation. In the body of the act, the Commission was invested with broad and far-reaching powers and, in addition to conferring upon it all requisite authority to conduct investigations, it, its members and employees were given, among other things, the right:
 

 To inquire into the affairs of all the governmental departments of the State, political subdivisions, State officials and all per
 
 *78
 
 sons receiving or having received compensation or remuneration from public monies; to institute and prosecute civil proceedings for the recovery, return, settlement and/or compromise of claims; to fix the venue of civil actions brought by it, its agents and representatives; to administer oaths, issue subpoenas for books and papers; to appropriate in favor of and for its use and benefit specified and unspecified monies to pay for its expenses in prosecuting its investigations or suits; to advance monies to any parishes, if needed, and to refund or reimburse any of the parishes for the amounts expended by such parish or parishes in its investigations or trials of suits and to instruct the Attorney General to institute prosecutions of any and all violations of the criminal statutes of the State.
 

 The act also provides that the sum of $500,000 for the biennium 1940-42 be specially appropriated to cover the expenses of the Commission necessary to carry out the purposes of the law, said amount, to be paid out of the General Fund of the State Treasury not otherwise appropriated; that no laws relating to prescription of civil proceedings shall apply to proceedings instituted by the Commission; that the Supreme Court, at the request of the Governor who is Chairman of the Commission, be empowered to transfer District Judges from one district to another and to appoint special judges ad hoc with power and jurisdiction as have duly elected District Judges and that such special judges ad hoc shall receive for their services the same salary as the District Judges now receive, payable on their own warrant after approval by any Justice of the Supreme Court, out of any funds appropriated to the Commission.
 

 This law went into full force and effect on July 6, 1940. Two days later, on July- 8, 1940, the Board of Liquidation of the State Debt, at a meeting held for that purpose, passed a resolution whereby it transferred and appropriated out of and from the Property Tax Relief Fund (created by Act 54 of 1934) the sum of $500,000 and made that sum available to the Crime Commission. This action, according to the resolution, was taken pursuant to the authority vested in the Board of Liquidation by the provisions of Paragraph 2 of Section 3 of Act 11 of the Extra Session of 1940, which amended and reenacted Section 3 of Act 54 of 1934. It was further provided by said resolution that the State Auditor and the State Treasurer be authorized, empowered and directed to transfer the $500,000 from the Property ■Tax Relief Fund and set it aside in a special account to the credit of the Crime Commission to be withdrawn from that account by the Commission in accordance with the provisions of Act 13 of 1940 creating said Commission, and that the appropriation of $500,000 authorized by said Act 13 be cancelled and rescinded.
 

 Subsequently, on December 26, 1940, the plaintiffs, eighty-one in number, residents of twelve different parishes of this State, alleging that they are realty taxpayers; that they are homestead owners and, as such, entitled to receive the homestead exemption provided by Paragraph 9, Section 4 of Article X of the Constitution, and
 
 *79
 
 that they are also taxpayers who contribute directly to the funds dedicated to the payment of homestead exemptions, brought this suit in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. They named as defendants in the action Sam H. Jones, Governor of Louisiana, as a member and Chairman of the Crime Commission; Eugene Stanley, Attorney General, as a member of said Commission; George T. Owen, Jr., Executive Counsel to the Governor, as a member of said Commission; Andrew P. Tugwell, State Treasurer, and Ludlow B. Baynard, State Auditor. Plaintiffs sought to have the defendants enjoined and restrained from receiving or making any payments or expenditures of the $500,000 transferred from the Property Tax Relief Fund under resolutions of the Board of Liquidation of the State Debt or any part thereof, or of any other public funds or money whatsoever placed under the control of the Crime Commission by the Board of Liquidation of the State Debt or secured by said Commission under any provision of Act 13 of 1940, and from doing anything whatsoever under the terms and provisions of Act 13 of 1940.
 

 The grounds advanced by the plaintiffs for the relief prayed for are:
 

 1. That Act 13 of 1940 is unconstitutional in that it violates numerous provisions of the Constitution (which are set forth in detail in the petition) ; and
 

 2. That the resolution of the Board of Liquidation of the State Debt is invalid, null and void, since Act 11 of the Extra Session of 1940, under the authority of which the resolution was adopted, is unconstitutional, or, in the alternative, that the resolution is ultra vires and violates the terms and the provisions of Act 54 of 1934, as amended by Act 11 of the Extra Session of 1940.
 

 The plaintiffs additionally prayed that the defendants be ordered to show cause why prohibitory and mandatory injunctions should not be granted and also that a temporary order be issued restraining the defendants from taking further action until the trial of the rule for an injunction. The District Judge refused to grant a temporary restraining order but issued a rule nisi ordering the defendants to show cause why the relief prayed for by plaintiffs should not be granted. On the day fixed for the hearing of the rule, the defendants appeared and filed: (1) exceptions of no right or cause of action and (2) an answer in which they denied all the material allegations of plaintiffs’ petition setting forth that Act 13 of 1940 is not only constitutional but that the resolution of the Board of Liquidation of the State Debt is legal and valid in every respect.
 

 The District Judge preliminarily reserved his judgment on the exceptions filed by the defendants and heard evidence on the merits of the case which was submitted both orally and in the form of affidavits. However, after the matter had been submitted to him for final decision, the judge maintained the exceptions of the defendants and dismissed the plaintiffs’ suit, being of the opinion that mere taxpayers are without a right of action to enjoin the
 
 *80
 
 transfer, allocation or expenditure of public funds under an alleged unconstitutional statute unless they are able to demonstrate that they directly contribute to the “fund which is to be expended or transferred and that, as a result, they will suffer substantial injury.
 

 The plaintiffs have prosecuted this appeal from the adverse decision.
 

 The first question presented by this appeal is whether the District Judge was incorrect in dismissing plaintiffs’ suit on the exceptions filed by the. defendants for the reason thát taxpayers, as such, are without right to maintain an action to enjoin State officials from expending public funds under color of authority of an alleged unconstitutional statute.
 

 That the ruling complained of is clearly erroneous is not now open to question. It is the firmly established jurisprudence of this State that a taxpayer may resort to judicial authority to restrain public servants froth transcending their lawful powers or violating their legal duty in any unauthorized mode which would increase the burden .of taxation or otherwise unjustly affect the taxpayer or his property. The fact that the taxpayer’s interest might be small and not susceptible of accurate determination is ,not sufficient to deprive him of the right. The action is regarded as having a public character and as being a proceeding in which the public complains. See Donaldson v. Police Jury, 161 La. 471, 109 So. 34, Borden v. Louisiana Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183, and Graham v. Jones, 198 La. 507, 3 So.2d 761.
 

 The District Judge, in expressing an opinion to the contrary, places great reliance upon the decisions of this court in Moss v. Hall, 133 La. 351, 63 So. 45, and Sutton v. Buie, 136 La. 234, 66 So. 956, L.R.A. 1915D, 178, and states that the Court in Borden v. Louisiana Board of Education, supra, did not intend to overrule those authorities. In this he errs. In the recent case of Graham v. Jones, supra [198 La. 507, 3 So.2d 768], we said:
 

 “In the case of Borden v. Louisiana Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183, this Court, affirming the holding in the Donaldson case, recognized the right of a taxpayer to sue to-prevent the alleged illegal expenditure of public funds. The decision in the Borden case, in effect, overrules the jurisprudence as éxpressed in the cases of Moss v. Hall and Sutton v. Buie.”
 

 In the instant case, the plaintiffs, having alleged and proved that they are residents and taxpayers of the State contributing to the General Fund and the Property Tax Relief Fund, have a right of action to enjoin and restrain the defendants from expending funds appropriated under a. statute which is claimed to be unconstitutional or from otherwise illegally transferring or allocating public monies from, one account to another.
 

 Counsel for the defendants, however, while recognizing the force and effect of the jurisprudence, tell us that the ruling in Graham v. Jones, supra, should be modified at least to’ the extent that taxpayers, who. aré unable to show that they will be:personally.affected in.some appreciable
 
 *81
 
 degree by the transfer, allocation or expenditure of the public fisc, should not be permitted to resort to the courts for relief. And they further say that the plaintiffs herein are “professional plaintiffs” whose names frequently appear as nominal petitioners in recent cases seeking to enjoin the expenditure of public funds and the activities of governmental officers and that the same attorneys appear over and over again as representing these plaintiffs.
 

 We are not at all impressed with this contention as we cannot see that any harmful result will be obtained by permitting taxpayers who support the Government to complain of the illegal expenditure of public monies. If a taxpayer cannot complain, — who else would have the right?
 

 With respect to the charge that the plaintiffs in the present suit are “professionals” and that their counsel are continually employed to make attacks upon the constitutionality of laws passed by the Legislature, it suffices to say that there is no evidence to exhibit that such is the case. But apart from this, it is settled that the court has no right to inquire into the motives of the plaintiffs as “ * * * the right of a person to institute a law suit is not dependent upon or affected by the motive which prompts him in the exercise of his right.” See Welsh v. Board of Levee Com’rs, 168 La. 1037, 123 So. 705, 706.
 

 The exception of no cause of action filed by the defendants was likewise erroneously sustained. This exception, according to the defendants’ brief; is predicated upon the theory that, notwithstanding the plaintiffs’ contention that Act 13 of 1940 is unconstitutional for various and sundry reasons, plaintiffs have failed to allege in their petition that the statute is unconstitutional as a whole. And it is maintained that, in view of the absence of such averment, plaintiffs are not entitled to relief because, if any part of the statute can be declared constitutional, then, obviously, the plaintiffs are without a cause of action to object to the expenditure of any of the funds appropriated thereunder.
 

 This contention is not meritorious for two reasons. In the first place, plaintiffs have attacked the constitutionality of the statute on various grounds. The question as to whether any portion of the act may be rescued or upheld is one of law for the court to determine. Hence, any allegation to the effect that the whole act is unconstitutional would be plainly a conclusion of law and not a statement of fact. The plaintiffs were not required to plead conclusions of law. Secondly, the plaintiffs claim that the appropriation of the sum of $500,000 to the Crime Commission contained in Section 7 of the Act is null and void because it violates Section 9 of Article IV of the Constitution and, further, that the,transfer of funds by resolution of the Board of Liquidation of the State Debt from the Property Tax Relief Fund to the Crime Commission was illegal and invalid. If either one of these grounds is sustained, the plaintiffs are clearly entitled to relief. We hold that the exception of no cause of action was improperly maintained and it is- now overruled.
 

 
 *82
 
 We, therefore, pass on to a consideration of the constitutionality of Act 13 of 1940.
 

 ■ [9] It should be stated at the outset that, while the plaintiffs assail the legislation as being violative of many sections and articles, of the Constitution, it is neither necessary nor important to the •decision in this case that each and every one of the many objections made by plaintiffs be considered or discussed in detail. This is because a finding that certain provisions of the act are unconstitutional would not have the effect of striking down the legislation as a whole, in view of the saving clause contained in Section 10 of the statute. Therefore, unless it be as claimed by plaintiffs, that the alleged unconstitutional provisions are so interwoven with or dependent upon the' part or parts which are found to be valid so that they cannot be separated or, unless it be that the appropriation of $500,000 to the use of the Commission for the biennium 1940-42 contained in Section 7 of the Act, is unconstitutional, the’ plaintiffs are not entitled to relief. Accordingly, we turn our attention to the constitutional obj ections made by the plaintiffs which they claim have the effect of either rendering the entire legislation void or of preventing the expenditure of any part of the fund specially appropriated by Section 7 of the Act.
 

 Plaintiffs assert in their brief:
 

 “That the entire Act No. 13 of 1940 is null and void, unconstitutional, and in violation of Section 16 of Article III, and Section 9 of Article IV of the Constitution in that the title of said Act does not indicate what is in the body of the Act, and said Act embraces more than one object.” *
 

 They maintain that, although the title declares that the act is one to create a Commission to investigate all of the governmental departments, commissions,- boards and governmental subdivisions of the State and provides for the powers and duties of the Commission with respect to said investigations, the statute also contains numerous objects or purposes,- not disclosed or indicated by its title, in the following particulars:
 

 1. The right to employ counsel, assistants, investigators, accountants, auditors and other employees, with authority to fix their compensation, and, with the consent of the Attorney General, to appoint Assistant Attorneys General, „ to fix their salaries and to draw warrants for the payment of their salaries.
 

 2. To grant to the agents or representatives of the Commission the right to:
 

 (a) Make investigations and hold hearings.
 

 (b) Institute and prosecute proceedings in the name of the State.
 

 (c) Settle or compromise claims of the State for monies, property or things of value; to receive monies, etc., in settlement of any claim or judgment; either to deposit said monies with the State Treasurer or to use the same to continue investigations or suits- and to dispose of any property or thing of
 
 value
 
 recovered as the Commission deems appropriate.
 

 (d) File suit against defendants either in the 19th Judicial District Court for East
 
 *83
 
 Baton Rouge Parish or at the domicile of anyone of the defendants, at the discretion of the Commission, coupled with the right to begin proceedings by attachment of the defendants’ property without necessity of bonds.
 

 (e) To issue subpoenas to compel the attendance of witnesses, produce books, papers either of a public or private nature, and to confer upon the State Police or any Deputy Sheriff the right to serve the subpoenas ; and,
 

 (f) To issue interrogatories in connection with any hearing.
 

 3. To provide that the failure to correctly answer interrogatories issued by the Commission will constitute the crime of perjury.
 

 4. To confer upon the District Court, within the jurisdiction of which any inquiry is held, the duty of issuing orders requiring persons to appear before the Commission and produce evidence and requiring persons to answer interrogatories.
 

 '5. By providing that the failure to answer shall be punishable by fine or imprisonment and that the penalty may be inflicted cumulatively for each day that the person refuses to answer the questions or produce his books and papers.
 

 6. It confers upon the Supreme Court the authority to appoint judges ad hoc with the same qualifications, powers and jurisdiction as District Judges.
 

 7. Requiring a Justice of the Supreme Court of Louisiana to approve the warrants for the monthly salaries of any of the said special judges ad hoc.
 

 8. Permitting the Commission to reimburse parishes for monies expended by them for investigation or trial of cases originating with the Commission.
 

 9. Providing that the intention of the act is to “provide additional means for making investigations and institute prosecutions and civil and criminal suits on behalf of the State.”
 

 10. Subordinating discretion of the Attorney General in criminal matters to the will of the Commission.
 

 11. Authorizing the Supreme Court when requested by the Governor to transfer District Judges from one district to another.
 

 12. Changing the law of prescription.
 

 13. Changing the entire meaning of the word “State” by defining it to be “persons receiving or having received compensation or remuneration from public monies”.
 

 14. Changing the venue in civil and criminal cases and changing the method for collection of debts.
 

 15. Creating a misdemeanor heretofore unknown to the law.
 

 Whilst a casual examination of the body of Act 13 of 1940 is likely to impress anyone having a rudimentary knowledge of constitutional law that many of its provisions are extraordinary, we think that the claim of the plaintiffs, that the act contains fifteen separate and distinct objects, is not only somewhat extravagant, but inaccurate. It is more appropriate to
 
 *84
 
 say that' there are probably a considerable number of provisions contained in the enactment which are patently discordant with, and violative of, more than one section or article of the Constitution. However, it 'does not necessarily follow that all of these provisions are to be regarded as separate and distinct objects which are not germane to the purpose indicated by the title of the law.
 

 Let us, therefore, examine the title and the body of the act with a view of ascertaining whether it violates Section 16 of Article III and Section 9 of Article IV of the Constitution.
 

 Section 16 of Article III declares:
 

 “Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.”
 

 And Section 9 of Article IV provides in part:
 

 “The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the government, * * *.
 
 All other appropriations shall be made by separate bills, each embracing but one object.”
 
 (Italics' ours.)
 

 The jurisprudence of this State is well settled by authorities too numerous to mention that these constitutional provisions are mandatory upon the Legislature. However, it is equally well established that a law which contains more than one object will not be declared wholly unconstitutional on that account. In such case, only those objects which are not expressed in the title of the law will be held unconstitutional. See State v. Ferguson, 104 La. 249, 28 So. 917, 81 Am.St.Rep. 123, and Airey v. Tugwell, 197 La. 982, 3 So.2d 99, and authorities there cited. On the other hand, it is likewise not open to discussion that, if the unconstitutional portions of the act are so interrelated and connected with the constitutional parts so that they cannot be separated without utterly destroying the intention manifested by the Legislature in passing the act, then the entire law is void. See State v. Exnicios, 33 La.Ann. 253; State ex rel. Mouton v. Judge, 49 La.Ann. 1535, 22 So. 761; State v. Ferguson, supra; State v. Duson, 130 La. 488, 58 So. 159; State v. Hincy, 130 La. 620, 58 So. 411; State v. Beeling, 169 La. 785, 126 So. 61, and Peck v. City of New Orleans et al., 199 La. 76, 5 So.2d 508, this day decided.
 

 Guided by these principles, we undertake a discussion of the legislation under attack. The title of Act 13 of 1940 reads as follows :
 

 “Cheating a Commission to investigate all of the governmental departments, commissions, boards, and governmental subdivisions of the State of Louisiana; providing the powers and duties of the Commission, and making an appropriation to cover the expenses of the Commission.”
 

 This title indicates that the body of the act creates a Commission to investigate all governmental departments and subdivisions of the State and that such Commission is empowered to perform all acts necessary to' accomplish its investigations. There is, therefore, a singleness of purpose or object expressed in the title of the act — that is — an investigation of the affairs of the government. Should there be
 
 *85
 
 any doubt as to the intention manifested by the Legislature, such uncertainty is removed by the preamble of the act which follows immediately after the title and which informs in substance that:
 

 In view of the recent- disclosure of widespread corruption and dishonesty in the administration of governmental affairs of the State which has resulted in serious loss to the State and shocked the moral conscience of its people; and, whereas, it is believed that a complete disclosure of the dishonest acts has not as yet been made; and, whereas, a searching and impartial investigation is necessary in order that the whole truth be known, the guilty punished and the rights of the State protected; and,
 

 “Whereas, it is necessary that the Legislature be informed as to all the facts in order to • intelligently enact remedial legislation ;
 

 “Therefore, be it enacted * *
 

 A fair reading of the preamble in connection with the title of the act discloses that, since it had been directed to the attention of the Legislature that graft and corruption in public affairs had been rampant, and since full disclosure of such corruption had not been made, the Legislature, in its desire to be fully informed so'that it could enact necessary remedial legislation to prevent any occurrences of that sort in the future, was to appoint a Commission to make a full investigation of the various departments of the State and its subdivisions and to report its findings and recommendations. Hence, wé see that the sole aim or purpose indicated was' for the creation of a Commission to investigate the scandals and report to the Legislature.
 

 Turning now to the body of the act, we find that Section 1 provides in substance for the creation of a Commission to be composed of the Governor, the Attorney General and the Executive Counsel of the Governor, which is empowered to employ counsel, assistants, investigators, etc., and to make contracts and incur such other necessary expenses “ * * * to carry out the objects and purposes of this Act * *
 
 *!\
 
 Accordingly, it is to be noted that, in the 'very first section of the act, the Legislature speaks of the objects and purposes of the statute thereby indicating that there is more than one purpose or aim in the law.
 

 Section 1 further provides that special assistants to the Attorney General may be appointed and commissioned by the latter to assist the Crime Commission in making its investigations.
 

 Section 2 defines the meaning of the word “State” as used in the act which is declared to be the State of Louisiana and all of its governmental departments and State and local governmental subdivisions, all State officials and “ * * * - all persons receiving or having received compensation or remuneration from public moneys”.
 

 This definition is, to say the least, incongruous and deceptive, for it is difficult to comprehend how any person who may have received monies or compensation from the State should-be regarded as the “State”. Moreover, there is certainly no indication in the title of the act that this
 
 *86
 
 Commission, which is to investigate the governmental departments and other State subdivisions, is to be given the power to likewise investigate all persons who have had any financial dealings with these departments or subdivisions. Accordingly, any person investigated on that score might have just cause to object. See State v. Ferguson, supra, and State ex rel. Lewis v. Judge, 44 La.Ann. 90, 10 So. 400.
 

 Section 3, paragraph (a) of the statute, provides that the Commission is vested with the authority, power and duty to investigate and inquire into the affairs of the State and all transactions, contracts, purchases, sales and expenditures of the State to the extent that it may deem necessary or desirable and to hold public or private hearings at such times and places as it may see fit. The power invested in the Commission by this paragraph is in strict conformity with the object indicated by the title of the act, that is, to investigate generally the affairs of governmental departments, etc., of the State.
 

 However, when we read Paragraph (b) of Section 3, we find a separate and distinct purpose from that which is indicated by the title of the law. By this paragraph, the Commission is empowered to institute and prosecute civil proceedings in the name of the State of Louisiana for the recovery and return and/or settlement and/or compromise of any claim of the State for any monies, property or • thing of value that may have been fraudulently or without authority appropriated, diverted, expended or acquired from the State; to receive any monies, property or thing of value in settlement of any claim or judgment; to deposit any monies recovered with the State Treasurer or to use any such monies to continue further investigations, suits, prosecutions, etc., of the Commission and to dispose of any property or thing of value recovered as the Commission deems appropriate.
 

 These provisions of Section 3(b) vest in the Commission the authority to perform functions which are plainly disconnected with the main aim or object of investigation as stated in the title of the law. They disclose a separate and distinct object and purpose — that is, the creation of a State agency for the enforcement and collection of claims — and, since this aim is not indicated in the title of the act, it is violative of Section 16 of Article III of the Constitution.
 

 Section 3(b) further continues with provisions that the Commission shall have the right, at its option, to file suit, either in the District Court of the Parish of East Baton Rouge or at the domicile of any one of the defendants named in such suit; that it is empowered to commence civil proceedings by attachment and that no laws relating to the prescription of civil proceedings shall apply to any actions filed by it. These provisions, aside from the fact that they are probably obnoxious to the Constitution for other reasons, are solely cognate to the object of creating a Commission to sue for and recover monies belonging to the State. Inasmuch as that object is not indicated by the title of the law, these provisions which are germane to it must likewise fall.
 

 
 *87
 
 Paragraph (c) of Section 3 provides that the Attorney General on his own motion, or when instructed by the Commission, may ■institute prosecutions for any violation of the criminal statutes of this State. This •paragraph is not of importance because the Attorney General, as the chief legal representative of the State, is vested with full ■power by the Constitution to prosecute any violation of the law.
 

 Section 4 of the statute provides that the Attorney General or any employee of the Commission, when authorized in writing by the Attorney General, shall be empowered to administer oaths, issue subpoenas and also issue interrogatories covering any matter relating to the disbursement or expenditure of any public- monies. This .authority granted to the Attorney General (who is a member of the Commission) and any employee of the Commission is germane and cognate to the object indicated in the title—that is, to create a Commission to make investigations. Hence it was -unnecessary to mention in the title of the act that the Commission or officers or employees acting under its authority would be empowered to subpoena witnesses, administer oaths and issue interrogatories. The grant of this power is proper as it merely affords to the Commission a neces.sary and integral means by which the investigations contemplated by the statute may be effectively conducted. See Peoples Homestead & Saving Ass’n v. Masling, 185 La. 800, 171 So. 36, State v. Martin, 192 La. 704, 189 So. 109, Jackson v. Hart, 192 La. 1068, 190 So. 220, Wm. M. Barret, Inc. v. First National Bank of Shreveport, 191 La. 945, 186 So. 741, and Airey v. Tugwell, supra.
 

 Section 5 of the Act authorizes the Supreme Court, on the request of the Governor, to transfer judges from one district to another and to appoint one or more special judges ad hoc having the same qualifications (except that.of residence), powers and jurisdiction as District Judges to hear suits instituted by the Commission and that said special judges ad hoc shall receive for their services the'same salary as District Judges, which shall be payable on their own warrants (after approval by any Justice of the Supreme Court) out of the funds appropriated in Section 7. Little or no discussion is necessary as to these provisions. They are clearly violative of Sections 3, 33, 34, and 35 of Article VII of the Constitution. Moreover, they are germane only to the object of the law which creates the Crime Commission as an agency to file suits and collect monies. Since this object is not indicated by the title of the act, Section 5 falls with it.
 

 Section 6 provides that the Commission shall make a full and complete report of its investigations to the Legislature at its next session with such recommendations as it may deem advisable and to the interest of' the State. This section is clearly cognate to the purpose indicated in the title to create a Commission to investigate the affairs of the State, and is, therefore, not open to attack.
 

 The same may be said of Section 9 which provides for a full, complete and final written report of the investigation conducted by the Commission, together
 
 *88
 
 with its findings and recommendations to be made to the Legislature at its Regular Session in 1944, at which time the Commission shall expire and stand dissolved.
 

 In the first paragraph of Section 7 of the Act, the sum of $500,000 for the biennium 1940-42 is specially appropriated to the Commission to cover the expenses “necessary to carry out the
 
 purposes
 
 of this Act”. (Emphasis ours.) Plaintiffs attack this appropriation on the ground that it violates Section 9 of Article IV of the Constitution, which, as above stated, provides that all appropriations other than those embraced in the general appropriation bill “shall be made by separate bills, each embracing but one object”.
 

 It is argued that, since the act embraces more than one object, the special appropriation of $500,000 to carry out the purposes of the act is unconstitutional.
 

 The point is well taken. The reason why the Constitution requires that special appropriations shall be contained in an act embracing not more than one object is obvious. If the appropriation is designed to cover two or more objects, it is impossible to determine how much of the money is to be dedicated to any one specific object. In other words, if, in the legislation before us, there is more than one object and only one -'of those objects is indicated in the title, all other objects must be stricken from the act if they .are separable from the object which is indicated by the title. The exclusion of the invalid objects renders it impossible for us to fathom how much money would have been appropriated by the Legislature to carry out the sole • object- which is indicated by the title of the law.
 

 As we have indicated, we have not the-slightest doubt that Act 13 contains more-than one object. The object expressed by the title is to create a commission to investigate the affairs of the governmental departments of the State and its subdivisions. When the body of the act is-read, it is found that the Commission is not only given authority to investigate and report on its investigations to the Legislature and make recommendations to it for the passage of remedial laws, but that powers'are-also conferred upon it to institute and prosecute civil actions for and on behalf of the State (a power which was. heretofore vested exclusively in the Attorney General. and District Attorneys as representatives of the Department of Justice) ; to recover money or property belonging to the State or any of its subdivisions, to compromise or otherwise settle, claims of the State and to dispose of ahy money or property recovered in any manner which the Commission might see fit-The grant of these powers manifestly evidences an object or purpose entirely disconnected with and not germane to an investigation of State affairs and a report by the Commission to the Legislature of its. findings. This object is not in any manner indicated by the title of the act and is,, therefore, violative of Section 16 of Article-Ill of the Constitution.
 

 Assuming that these dual objects contained in the act could' be separated so-as to'save the object which is expressed in the title, from unconstitutionality, it. does..
 
 *89
 
 ■not follow that the special appropriation .granted to the Commission by Section 7 can be rescued. On the contrary, the exclusion from the act of the invalid object, which deals with the prosecution and recovery of claims by the Commission, renders us incapable of determining how much of the $500,000 would have been appropriated by the Legislature to a Crime Commission invested merely with the authority to investigate and report its findings. Hence, the entire appropriation must fall since it violates Section 9 of Article IV of the Constitution.
 

 Being of this view, it is unnecessary for us to conclude whether Act 13 of 1940 is wholly unconstitutional because it contains more than one object in violation of Section 16 of Article III of the Constitution. The plaintiffs sue as taxpayers to prevent the expenditure of funds which have been appropriated under an alleged unconstitutional statute. A determination that the appropriation is void as a matter of law is sufficient to sustain plaintiffs’ cause of action and warrants the relief for which they pray. They are neither being investigated by the Crime Commission nor are they being sued by that body for the recovery of money or property illegally taken from the State. They are interested only as taxpayers seeking to restrain the illegal expenditure of public funds.
 

 Counsel for the defendants have argued at length that Act 13 contains but one object and that each and every one of its provisions are cognate to the object indicated in the title. In support of their contention, they have appended, as part of their brief, statutes from Tennessee and other states where legislation creating commissions to investigate crime has been upheld by the courts. Particular emphasis is placed on the Tennessee statute (Act 13 of the Third Extra Session of the Tennessee Legislature of 1937) which was declared constitutional by the Tennessee Supreme Court in Rushing v. Tennessee Crime Commission, 173 Tenn. 308, 117 S.W.2d 4, and Joyner v. Priest, 173 Tenn. 320, 117 S.W.2d 9. Counsel maintains that the law is practically identical with the legislation under attack.
 

 An examination of the Tennessee statute and the authorities relied upon amply demonstrates the error of counsels’ contention. That statute was one to provide for the creation and establishment of a Crime Commission for the State of Tennessee. In the body of the act, the Commission is given all necessary authority to investigate the commission of crime in the State, including the power to issue subpoenas and other process in aid of its investigations, make recommendations to the proper prosecuting officers for the prosecution of crime and, finally, to report to the Legislature its findings and recommendations and draft the bills necessary to carry them out. The validity of this statute was upheld by the Supreme Court of Tennessee, and correctly so, because a reading of the act reveals that the only aim and intention of the Legislature of Tennessee was to appoint a commission with investigatory powers respecting the commission of crime and to report its findings to the Legislature.
 

 
 *90
 
 That enactment is vastly different from the legislation under consideration here. We have not said that the Legislature does not have the power or right to appoint a commission to investigate scandal or crime and to make a report of its findings to that body in order that remedial legislation may be enacted. What we do say is that an act which indicates by its title that such a commission is to be created and which, in its body, in addition to creating such a commission and giving it necessary investigatory powers, goes further and confers upon that commission authority to prosecute suits and collect money for and on behalf of the State and dispose of that money in any manner as it sees fit, contains more than one object; that it is, therefore, violative of Section 16 of Article III of the Constitution and that the appropriation made under it violates Section 9 of Article IV.
 

 But counsel for the defendants, in arguing that the act contains but one object, persist that there is a distinction to be drawn between aim, purpose and object. In their brief, they say:
 

 “In the first place, it is important to notice again the dual purpose (not dual object) for which the Crime Commission was created. It is both an informatory body, in a sense, and a law enforcement agency. Its purpose is to investigate violations of the law and fraudulent practices So that, on the one hand guilty parties may be prosecuted and fraudulently diverted public funds may be recovered, and on the other hand, so that the Legislature may be properly informed as to the nature of criminal and fraudulent practices in the-future.”
 

 We are unable to comprehend the-technical difference sought to be drawn by counsel for the defendants between the purpose of an act and the object of an act. The jurisprudence of this State, so far as we are able to ascertain, is in complete accord that the purpose, the aim: or the object of an act is one and the same thing. If there be any fine distinction of consequence between the terms, it is certain that the framers of the Constitution of 1921 (guided by the adjudications of this court) did not have any such distinction in mind when they used the word “object" in Section 16 of Article III and in Section 9 of Article IV.
 

 Since we hold that the appropriation of $500,000 in Section
 
 7
 
 of Act 13 of 1940 is null, it follows that the transfer of funds amounting to that sum (by the resolution of the Board of Liquidation of the State Debt) to the use of the Crime Commission under authority of Act 11 of the Extra Session of 1940, is likewise invalid. Aside from any constitutional objections to the provisions of Act 11 of the Extra Session of 1940, we think that the resolution of the Board of Liquidation of the State Debt was utterly void. The evidence plainly reveals that, at the time this resolution was adopted, neither the State nor its political subdivision had been reimbursed for losses accruing to them on account of the payment of the homestead tax exemption. Nor does it appear that the common public schools had received any share of the
 
 *91
 
 Property Tax Relief Fund which is allocated to them by Section 3 of the Act, as amended. In the absence of such evidence, it is clear that the Board of Liquidation of.the State Debt was without right to disburse any monies belonging to the Property Tax Relief Fund, because Paragraph 2 of Section 3 of Act 54 of 1934, as amended by Act 11 of the Extra Session of 1940, states:
 

 “After the payment in full as provided in sub-paragraph 1,
 
 above, relating to the public common schools, and relating to the homestead tax exemption,
 
 the residue of said funds
 
 shall be distributed and disbursed in accordance with resolutions of the Board of Liquidation of the State Debt for public purposes; * * (Italics ours.)
 

 For the reasons assigned, the judgment appealed from is reversed, the appropriation of $500,000 to the Crime Commission in Section
 
 7
 
 of Act 13 of 1940 is declared unconstitutional and the resolution passed by the Board of Liquidation of the State Debt, on July 8th, 1940, is held to be invalid and illegal. It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiffs and against the defendants, Sam H. Jones, as Chairman and as a member of the Crime Commission, Eugene Stanley, as a member of said Commission, George T. Owen, Jr., as a member of said Commission, Andrew P. Tugwell, State Treasurer, and Ludlow B. Baynard, State Auditor, enjoining and restraining them, their agents, representatives and employees, or either or any of them, from receiving, paying or making any other or further payments or expenditures of the $500,000 specially appropriated by the Legislature in Section
 
 7
 
 of Act 13 of 1940 or any monies collected by the said Crime Commission by any lawsuit or compromise or from acting upon or carrying out the resolutions of the Board of Liquidation of the State Debt, of date July 8, 1940.
 

 O’NIELL, C. J., concurs in the decree.