672 So.2d 375 (1996)
Robert F. MEREDITH, III, John W. Crancer, Harry F. Hufft, L.D. Uhler, C. Paul Hilliard, Joe Elsbury, Jr., and the Louisiana Independent Oil and Gas Association, Inc.
v.
Honorable Richard P. IEYOUB, In His Capacity as Attorney General of the State of Louisiana
No. 95 CA 0719.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*376 Daniel G. Fournerat, Michael G. Durand, Michael W. Landry, Lafayette, for Plaintiffs-Appellees Robert F. Meredith, III, John W. Crancer, Harry F. Hufft, L.D. Uhler, C. Paul Hilliard, Joe Elsbury, Jr., The Louisiana Independent Oil and Gas Association, Inc.
E. Kay Kirkpatrick, Roy A. Mongrue, Jr., James M. Ross, Baton Rouge, for Defendant-Appellant Honorable Richard P. Ieyoub, Attorney General, State of Louisiana.
Bob J. Wright, Lafayette, and Paul R. Baier, Saul Litvinoff, Charles W. Roberts, Baton Rouge, for Intervenors-Appellants Domengeaux, Wright, Moroux and Roy John D. Bernhardt.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
LOTTINGER, Chief Judge.
The question posed by this appeal is whether the Attorney General of the State of Louisiana has the authority to enter into a contingent fee contract with private attorneys for the enforcement of the State's environmental laws. From a determination by the trial court that the contingent fee provisions of said contract violate the Louisiana Constitution of 1974 and certain state statutes, the Attorney General appeals.

FACTS
This litigation arises out of a "Contract for Professional Legal Services" ("contract") executed by the Attorney General of Louisiana ("Attorney General") and the law firms of Domengeaux, Wright, Moroux and Roy, A Professional Law Corporation, and John D. Bernhardt, A Professional Law Corporation ("Intervenors") (sometimes collectively referred to as "Appellants"). Under the terms of the contract, Intervenors were appointed to serve as "Special Assistant Attorneys General", and were charged with the investigation and prosecution of state environmental damage claims. The contract further provided that if damages were recovered, then said firms would be entitled to compensation in an amount equal to twenty-five percent of the "Gross Recovery"[1], if any, on each claim, in addition to reimbursement of "Qualifying Expenses"[2].
*377 In response, the Louisiana Independent Oil & Gas Association, Inc. ("LIOGA") and several of its individual members (collectively referred to as "Appellees") filed this suit seeking a judicial declaration that the contract was invalid together with an injunction prohibiting the implementation and enforcement of the contract. The Attorney General then filed various exceptions asserting that Appellees lacked standing to raise the issues involved, and further, that the court was not faced with a justiciable controversy. The Attorney General further claimed that because no action had been initiated against them, Appellee's suit was premature.
At the outset of the hearing, the trial court permitted Intervenors to enroll as additional defendants in this matter, but overruled the exceptions urged by the Attorney General. Following a hearing, the trial court concluded that while Louisiana's constitution grants to the attorney general the power to prosecute and pursue violations of state statutes and departmental regulations, the contingent fee contract at issue in this case was illegal inasmuch as it directly contravened the Louisiana Constitution of 1974 and La.R.S. 30:2205. The court cautioned however, that its judgment did not "prevent the attorney general from proceeding with his desired litigation through the use of his own staff and resources, or other legal contracts for private counsel." It is from this ruling that Appellants have separately appealed.

ASSIGNMENT OF ERRORS
In their respective briefs, the Attorney General and Intervenors assert that the trial court erred in the following respects:
(1) In not maintaining the exceptions filed by the Attorney General;
(2) In finding that Article VII § 9 of the Louisiana Constitution of 1974 invalidates the contract;
(3) In finding that La.R.S. 30:2205 invalidates the contract; and
(4) In issuing an injunction prohibiting the performance of the contract, which was valid under applicable law, absent a showing by Appellees of irreparable injury.

I
The first issue raised by Appellants is whether Appellees have standing or a right to bring this action which seeks to restrain the Attorney General from enforcing state environmental laws through contingent fee contracts with private attorneys. Appellants further argue that because Appellees have not alleged that they are the subject of a state investigation or lawsuit, Appellees' suit is premature and not ripe for adjudication. The trial court overruled the exceptions filed by the Attorney General holding that:
[i]t is undisputed that the additional petitioners in this proceeding are citizens and taxpayers of the State of Louisiana, and, therefore, have the right to test the validity of a contract which purports to give to a private law firm rights and monies which the law directs be deposited into the treasury of the State of Louisiana.
This court recently examined the issue of standing in Mouton v. Department of Wildlife & Fisheries for the State of Louisiana, 95-0101, p. 6 (La.App. 1st Cir. 6/23/95); 657 So.2d 622, 626, writs denied, 95-2161 and 95-2164 (La. 11/17/95); 663 So.2d 710 and 711, wherein we determined that:
to assert an action, a plaintiff must have a real and actual interest in the action asserted. LSA-C.C.P. art. 681; Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895 (La.1993); Byrd v. International Paper Company, 594 So.2d at 962. [Byrd v. International Paper Company, 594 So.2d 961, 962 (La.App. 3rd Cir.1992).] Standing is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court. The requirement of standing is satisfied if it *378 can be said that the plaintiff has a legally protectible and tangible interest at stake in the litigation. Richardson v. Reeves, 600 So.2d 138, 140 (La.App. 2nd Cir.1992). In other words, standing requires that the plaintiff have an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest.
(Emphasis in original).
It is clear that under Louisiana jurisprudence, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1357 (La. 1991)[3]; Stewart v. Stanley, 199 La. 146, 5 So.2d 531, 535 (1941). The fact that the taxpayer's interest might be small and not susceptible of accurate determination is not sufficient to deprive him of the right. 586 So.2d at 1357-58; 5 So.2d at 535.
In the instant case, Appellees have alleged and proved that they are residents and taxpayers of the state who are engaged in the field of oil and gas. Through this action, they seek to restrain and enjoin the Attorney General from contracting with private law firms for the enforcement and prosecution of state environmental laws on a contingent fee basis. Appellees allege that the Attorney General has exceeded his constitutional authority and that the contingent fee provisions of the contract are an unconstitutional diversion and/or appropriation of state funds.
Based upon our review of the record in this matter, we find that Appellees have failed to offer proof that the actions of the Attorney General would, with certainty, increase their tax burdens; however, proof of an increased tax burden is not the only method by which a taxpaying citizen may seek judicial authority to restrain a public body from alleged unlawful action. Louisiana Associated General Contractors, Inc., 586 So.2d at 1358. Appellees, in their capacity as independent oil men and members of LIOGA, a trade association established to protect their interests, fear they may be called upon to defend potentially groundless claims as targets of an environmental "witch-hunt". Appellees seek to challenge the legality, not of the statutes themselves, but rather, the method proposed by the Attorney General for their enforcement.
For the foregoing reasons, we cannot say that the trial judge erred in his determination that Appellees possessed standing to test the validity of the Attorney General's contract.

II
In their second and third assignments of error, Appellants assert that the trial court erred in finding that the contingent fee contract is illegal because it contravenes Article VII § 9(A) of the Louisiana Constitution of 1974 and La.R.S. 30:2205. Article VII, § 9(A), provides in pertinent part as follows:
"All money received by the state or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury ...". Similarly, the pertinent provision of La.R.S. 30:2205 reads as follows:
A. (1) All sums recovered through judgments, settlements, assessments of civil or criminal penalties, funds recovered by suit or settlement from potentially responsible parties for active or abandoned site remediation or cleanup, or otherwise under this Subtitle, or other applicable law, each fiscal year for violation of this Subtitle, shall be paid into the state treasury and shall be credited to the Bond Security and Redemption Fund. After a sufficient amount is allocated from that fund to pay all obligations secured by the full faith and *379 credit of the state which become due and payable within any fiscal year, the treasurer, prior to placing such remaining funds in the state general fund, shall pay into a special fund, which is hereby created in the state treasury and designated as the "Hazardous Waste Site Cleanup Fund"....
The Attorney General argues that under the terms of the contract, a defendant against whom a recovery was obtained would be required to make two paymentsone to the state's attorney for the amount of his contingent fee, and the second to the state for the balance of the amount owed under the judgment or settlement. The Attorney General asserts that receipt by the state's attorneys of their earned fee does not constitute a receipt of said funds by the state.
Similarly, Intervenors argue that the above-quoted statutory language applies only to those sums which the state is entitled to retain. Because a portion of the funds recovered pursuant to a contingent fee contract would be burdened by a privilege in the attorney's favor, said portion would not be subject to deposit into the state treasury. Intervenors further argue that because the statute specifies that monies deposited into the Hazardous Waste Site Cleanup Fund would be utilized for the same purpose[4], i.e., investigation and enforcement of Louisiana's environmental laws, the aim of the statute is not thwarted by the Attorney General's execution of contingent fee contracts.
Upon careful review of this matter, we find at the outset that the trial court was correct in its determination that the Attorney General, by virtue of the broad powers conferred upon him by Article IV, § 8[5], clearly has the authority "to prosecute and pursue violations of the environmental statutes of this state and regulations of the Department of Natural Resources".
While it is true that Article IX, § 1 charges the legislature with the responsibility of enacting laws for the protection and conservation of the environment, it is equally clear that the legislature may not thereby usurp the Attorney General's independent constitutional authority to institute suits for the protection of the rights and interests of the state. Rather than restricting the Attorney General's power to institute suit, the provisions of La.R.S. 30:2025 cited by Appellees[6] merely serve to confirm the Attorney General's constitutional role as the state's chief legal officer. As our supreme court observed in State v. Texas Co., 199 La. 846, 7 So.2d 161 (1942):
The Attorney General has unquestionably the right to file a suit in the name of the State and he is not required to obtain the permission of the Governor or any other executive or administrative officer or board in order to exercise it. This power and duty is inherent in him in the nature of things and has been specially charged to him by the people themselves in the Constitution.
State v. Texas Co., 7 So.2d at 162.
Appellees' assertion that the revised language of Article IV, § 8 of the Constitution *380 of 1974[7] was intended to restrict the authority previously exercised by the Attorney General is, in our opinion, a distinction without a difference. The Attorney General's unquestioned right to file suits on behalf of the state remains the same. (See, IX Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Jan. 15, 1974 at 3379).
Having said this, it necessarily follows that the attorney general is vested with the authority to retain private counsel to assist him in the performance of his duties. La.R.S. 49:258 The essential question posed by this appeal then becomes whether or not the Attorney General may retain private counsel to represent the interests of the state under a contingent fee contract.
This appears to be a res nova issue in Louisiana, and as such, this court must attempt to resolve this question without the benefit and guidance of prior jurisprudence. Like the trial court, we commend the Attorney General for his work in pursuing environmental violators and sympathize with the manpower and budgetary restrictions that impede such efforts; however, we cannot allow the rightness of the cause to determine our application of the law. Even if we were to accept the Attorney General's argument that attorneys fees paid by environmental violators directly to the state's contract attorneys do not constitute funds received by the state and therefore, cannot contravene Article VII § 9(A), we are still confronted with the express provisions of La.R.S. 30:2205(A)(1). The inescapable fact is that said attorneys fees do not constitute sums which violators must pay over and above any penalty owed to the state, but are instead part and parcel of any recovery to which the state is entitled. The language of La.R.S. 30:2205 is clear and unambiguous:

All sums recovered through judgments, settlements, assessments of civil or criminal penalties, funds recovered by suit or settlement from potentially responsible parties for active or abandoned site remediation or cleanup ... shall be paid into the state treasury and shall be credited to the Bond Security and Redemption Fund.

La.R.S. 30:2205(A)(1) (Emphasis supplied).
While the Attorney General cites numerous state statutes wherein the Legislature has provided for the deduction of contingency fees and other commissions by state agents (see, La.R.S. 23:1669(C)[8]; 41:724[9]; 41:922[10]; 46:15[11]; 47:15[12]; and 47:2060[13]), we must agree with the trial court's determination that
[t]he very fact that the Louisiana legislature has found it necessary to enact special legislation authorizing contingent attorney's fees in those cases where it finds appropriate, but has specifically mandated *381 that all recoveries in cases involving environmental legislation shall be paid into the state treasury is a very strong supplemental argument that this contingent fee contract is not legal.
Absent legislative amendment to R.S. 30:2205(A) or the addition of an express statutory provision to the effect that contingent legal fees paid to state attorneys do not constitute amounts recovered, such a contingent fee contract is in contravention of Louisiana law, and is, for this reason, absolutely null under Louisiana Civil Code article 2030[14].

III
In their final assignment of error, Appellants assert that the trial court erred in issuing an injunction prohibiting performance of the contract absent a showing by Appellees of irreparable injury. While irreparable harm is the usual issue in an injunction proceeding, it is clear that when the plaintiff is alleging that the defendant is acting in violation of the law, there is no need to prove irreparable harm. Hays v. City of Baton Rouge, 421 So.2d 347, 349 (La.App. 1st Cir.), writ denied 423 So.2d 1166 (La.1982). Inasmuch as Appellees have alleged and shown that the contingent fee provisions of the Attorney General's contract are in contravention of Article VII, § 9(A) of the Louisiana Constitution of 1974 as well as state statutory law, we affirm the trial court's granting of the injunction.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed at Appellants' costs.
AFFIRMED.
FITZSIMMONS and GONZALES, JJ., concur and assign reasons.
GONZALES, Judge, concurring.
I agree with that part of the majority opinion that declares the contingent fee contracts illegal. However, with respect to all other parts of the opinion, I concur in the result.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring.
I concur. The Louisiana Legislature, as the representative of the real owner of any funds collected, the people of Louisiana, must exempt the designated funds from those covered by the statutory or constitutional provisions, and, additionally, specifically authorize a contingency fee contract.
NOTES
[1] Section 1.10 of the Contract defined "Gross Recovery" as:

the aggregate of all sums of money, including future benefits or payments, (excluding any mineral royalties, rentals, bonuses or other payments) and/or any civil or other penalties or fines, and the present fair market value or equivalent of non-monetary items (including but not limited to any on-site or off-site remediation, mitigation, restoration, clean-up or other response) which become payable, deliverable or performable or which are paid to and received by or for the State, and/or the state through Counsel, the Attorney General, or any agent or employee of any of the foregoing, in settlement or satisfaction of all or any part of any claim and determined before the deduction of any sums due to Counsel in payment or reimbursement of any attorney's fee or Qualifying Expenses due under this Agreement.
[2] Section 5.2 of the Contract defined "Qualifying Expenses" as:

all internal and external expenses incurred or advanced in connection with this Agreement by Counsel or any Associated Counsel, and include but are not limited to, all reasonable costs and expenses attendant to the investigation and prosecution of the Claims such as costs of court proceedings, (including subpoenas, witness fees, reporting and transcripts), depositions, transportation and travel costs, lodging and out-of-town meals, photographs (including film, videotapes and other document imaging, reproduction or processing), demonstrative exhibits, expert witnesses, analytical and other laboratory services, assessments, investigations, reports, photocopies or other duplication, long-distance telephone calls, facsimile and other means of document delivery and computer usage (including computerized legal research, document management, imaging and automated location and retrieval) and supplies. Where costs are internally incurred by Counsel or any Associated Counsel, reimbursement shall not exceed the amounts set forth on Appendix "A," or, if no amount is set forth, the reasonable value thereof. All qualifying expenses incurred in claims initiated by Counsel shall be payable in full upon settlement, compromise, satisfaction of judgment or other resolution of the Claim. Qualifying expenses incurred shall be billed and payable pursuant to regulations issued by the Division of Administration. Qualifying Expenses per Claim shall not exceed one million ($1,000,000.00) dollars.
[3] The court in Louisiana Associated General Contractors, 586 So.2d at 1358, held that "unlike a citizen attempting to compel the performance of a public duty, a citizen attempting to restrain unlawful action by a public entity is not required to demonstrate a special or particular interest distinct from that of the public at large. Consequently, taxpayer plaintiffs seeking to restrain action by a public body are afforded a right of action upon a mere showing of an interest, however small and indeterminable."
[4] La.R.S. 30:2205(D) provides:

D. The monies in the site cleanup fund shall be used to defray the cost of investigation, testing, containment, control, and cleanup of hazardous waste sites, to provide money or services as the state share of matching funds for federal grants, and to defray the cost of securing and quarantining hazardous waste sites, including the acquisition of rights of way, easements, or title when necessary. Interest earned through the investment of the fund capital shall be credited to the Hazardous Waste Site Cleanup Fund.
[5] Article IV, § 8 of the Louisiana Constitution of 1974 provides:

Section 8. There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state....
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; ....
[6] Article IX, § 1 of the Louisiana Constitution of 1974 provides:

Section 1. The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
[7] Article VII, § 56 of the Louisiana Constitution of 1921 which was the basis of the supreme court's holding in State v. Texas Co., granted to the Attorney General the "power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as [he] may deem necessary for the assertion or protection of the rights and interests of the State." Article IV, § 8 of the Louisiana Constitution of 1974 provides that the Attorney General shall have the authority to institute, prosecute, or intervene in any civil proceeding "as necessary" rather than as he "may deem necessary".
[8] La.R.S. 23:1669(C) provides that the administrator of the Office of Employment Security may procure the assistance of qualified attorneys on a contingent fee basis to collect delinquent unemployment compensation contributions.
[9] La.R.S. 41:724 provides that an attorney for a school board shall receive ten per cent of all moneys collected by him on past-due notes for the purchase price of sixteenth section lands.
[10] La.R.S. 41:921-22 provide that the Attorney General may employ private attorneys on a contingent fee basis to recover title to sixteenth sections lands owned by the state and/or trespass damages thereto.
[11] La.R.S. 46:15 provides that the Attorney General shall designate counsel to pursue the collection of claims by state hospitals on a contingent fee basis.
[12] La.R.S. 47:1512 provides that the collector of revenue is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due, and if such accounts are referred to an attorney, an additional charge of ten per cent attorney fees shall be paid by the tax debtor.
[13] La.R.S. 47:2060 provides that district attorneys who collect money through proceedings against defaulting tax collectors shall receive five per cent of the amount collected.
[14] La.Civ.Code art. 2030 provides that:

A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.