McCALEB, Justice.
The Legislature of 1967, by Act 2 of the Extraordinary Session thereof (R.S. 23:880.1-880.18), created a commission denominated as the “Labor-Management Commission of Inquiry” to investigate and find facts relating to violations or possible violations of the criminal laws of this State or of the United States arising out of or in connection with matters in the field of labor-management relations. According to the preamble to the act, this Commission of Inquiry was conceived and created to examine the causes for the unprecedented conditions existing in the State in the field of labor-management relations under which, by reason of suspected violations of the State and Federal criminal laws, there has been a shutdown of construction work involving industrial development projects furnishing employment to thousands of persons; that the present conditions vitally affect the public interest and threaten to disrupt the conduct of normal labor-management relations. It was further stated that, in view of the presently existing conditions, the public interest requires that the causes thereof be investigated on a statewide basis as a supplement to assist activities of the district attorneys, grand juries and other law enforcement officials and agencies of this State and of the United States.
In the body of the act, the Commission is created and invested with power to ascertain the facts surrounding and pertaining to any actual or possible violations of the criminal laws relating to, arising out of or connected with problems or disputes in the field of labor-management relations. This power was limited however, the act declaring, “* * * it shall be investigatory and fact finding only * * * ”, and it *1000 was further provided that “The commission shall have no authority to and it shall make no binding adjudication with respect to such violation or violations; * * * ” and “No findings, conclusions, recommendations or reports of the commission may be used as prima facie or presumptive evidence of the guilt or innocence of any person in any court of law.” Additionally, the act provides that the Commission “* * * shall make and publicize its findings with respect to the question whether or not there is probable cause to believe that there are or have been violations of any criminal law * * *. Copies of its report shall be immediately furnished to the governor, the lieutenant governor, the attorney-general and the legislature.”
After the membership on the Commission had been duly appointed and the body began to function conformably with the authority vested in it, plaintiff instituted the present suit for an injunction as a taxpayer to have the statute declared unconstitutional on various grounds which will hereinafter be set forth and discussed. The principal attack levelled by the plaintiff is that the act denies him due process as guaranteed by Section 2 of Article I of the Louisiana Constitution and the Fourteenth Amendment to the Constitution of the United States, because the powers vested in the Commission are such that, in their investigations and hearings authorized under the act, plaintiff and/or persons, similarly situated are denied assistance of counsel, the right of confrontation, the right of cross-examination of witnesses and the right to compulsory process for their witnesses. The provisions of the act thus assailed have to do with the procedure rules set forth in the act for hearings by the Commission.
This attack was sustained by the district judge and the act declared unconstitutional in its entirety, despite the fact that it contains a severability clause. In accordance with his decision, the judge issued a preliminary injunction enjoining all action by the Commission and also enjoining the expenditure of funds appropriated in the statute. The defendants,[1] however, secured under R.S. 13:4061 and 13 :4431 a suspensive appeal to this Court and the matter has been argued and submitted for our decision.
Imprimis, we notice that, although the defendants filed no written pleadings at the hearing on the rule nisi for a preliminary injunction, they have in this Court interposed exceptions of no right of action and no cause of action. We nevertheless pretermit discussion of these exceptions, in view of the conclusion we reach on the merits anent plaintiff’s claims that the *1002 ¡statute is unconstitutional. Accordingly, we direct our immediate attention to plaintiff’s principal attack, and the holding of the trial judge, that R.S. 23:880.1-880.18 denies ;plaintiff and those similarly situated due ;process under the State and Federal Constitutions in that it is an agency “ * * * ■which makes determinations in the nature ■of adjudications affecting legal rights. ■* * * Its duty in large part is to find •that named individuals are responsible for ■criminal actions and to advertise (publicize) such findings and serve as part of the process of criminal prosecution.”
This ruling, in our opinion, does not conform with the nature of the statute and the purpose for its enactment, for the Labor-Management Commission of Inquiry is not invested with any power to make adjudications affecting legal rights. On the contrary it is, as its provisions expressly set forth, an administrative commission (R.S. 23:880.1) created for the special purpose of investigating and finding facts in relation to violation of existing criminal laws “ * * * affecting in a significant manner labor-management relations in one or more areas of the state * * * ” in various construction projects which may, in the opinion of the Governor, operate as a serious threat to the economic well-being of the affected area or the State as a whole (R.S. 23:880.5). By Section 880.6(A) it becomes the duty of the Commission, when called on by the Governor to investigate and hold hearings, to receive testimony and documentary .evidence and make findings with respect to any actual or probable violations of criminal laws which relate to the problems or disputes in the field of labor-management relations.
Under the provisions of Section 880.7(A), the Commission is required .to publicize its findings with respect to, the question whether or not there is probable, cause to believe that there have been violations of any criminal law arising out. of the subject matter of its investigation. But it “ * * * shall have no authority to and it shall make no binding adjudication with respect to such violation * * * ”, however it may make such recommendations to the Governor for action as it deems appropriate, and copies of its report are to be furnished to the Governor, Lieutenant Governor, the Attorney General and- the Legislature. Nevertheless its findings,, recommendations and conclusions may not be used as prima facie or presumptive evidence of guilt or innocence of any person in any court of law.
It is seen from the foregoing that this administrative body has no right to adjudicate; it merely finds, facts and recommends. Hence, it is difficult to perceive that these limited powers impinge upon any constitutional guarantee to which those being investigated are entitled • under the Bill of Rights. . , .
*1004 Section 2 of Article I of our Conr stitution provides in part: “No person shall be deprived of life, liberty or property, except by due process of law.” Surely it cannot be said that persons investigated by the Commission, who are found factually to have violated any criminal law, are deprived of either life or liberty or property by such finding. Indeed, the administrative agency is merely an adjunct of the executive and legislative departments reporting, as it does, its findings of facts which may serve these departments with data from which new laws may be enacted, and also assisty in the speedier and more effective enforcement of criminal laws in the highly sensitive and specialized field of labor-management relations. In truth, the findings of the Commission simply focus the attention of the prosecuting and executive officers to probable violations which may or may not provide a basis for criminal proceedings. No life, liberty or property are taken and can ever be taken by the investigation and finding, but only after institution of a formal charge and subsequent criminal proceedings clothed with all the safeguards of due process.
Furthermore, the right of confrontation, assistance of counsel and compulsory process for obtaining witnesses are guaranteed only by Section 9 of Article I of our Constitution to an accused in a criminal prosecution. The investigatory and fact-finding functions of the Labor-Management Commission of Inquiry are clearly not a criminal prosecution (see Article 381, Louisiana Code of Criminal Procedure; State v. Williams, 192 La. 713, 189 So. 112, 122 A.L.R. 665; State v. Shushan, 206 La. 415, 19 So.2d 185) and, hence, plaintiff’s claim of denial of due process cannot in anywise be supported by Section 9 of Article I of the Louisiana Constitution.
Reverting again to the claim that the powers vested in the Commission violate the due process provision of Section 2 of Article I of our Constitution, we believe that the functions of the Commission, i.e., investigatory and fact finding, are somewhat akin to that of the grand jury lacking, however, the effectiveness of formal accusation, for the Commission reports merely inform the Legislature, the Governor and other executive officers that a crime has probably been committed. Without action on the part of those officers charged with the duty of prosecuting crime, the Commission’s findings amount to nought. It is merely advisory and does not affect constitutional rights.
On the other hand, unlike grand jury proceedings, the Commission’s hearings and findings may be public, and this is the underlying basis of plaintiff’s complaint, for he says that this Commission is permitted to slander and otherwise castigate him, and that the only way he can exculpate himself from scandalous charges is to be indicted *1006 • or informed against in a criminal prosecution. The thrust of the argument is that, .absent the right of confrontation by his accusers, cross-examination and the summoning of his own witnesses, he may be :subjected to slander, villification and dis- . approbation for which he is without redress, as the statute grants the members of the Commission and its employees immunity in any suit from any liability for damages in connection with its findings or proceedings had in the exercise of their duties.
We find no merit in this complaint. For it would overlook, we think, the fundamental concept that a mere accusation by those vested with governmental powers, .acting in the course and scope of their duties, does not in anywise deny due process to the accused. Indeed, the argument seems to be based on the premise that there is some sort of constitutional distinction between the public hearings of an administrative body and the secret proceedings of a grand jury. However, we know of no basic objection from a constitutional standpoint to an open investigation by an administrative body from whose factual findings accusations of commission of crime may •subsequently be charged by the properly •constituted authorities. When the grand jury indicts and when a prosecutor charges by information, the accused is assuredly just as scandalized, actually more so, as •the person found to have violated a criminal law by the Commission. Yet, no one could logically contend that the accused can claim violation of due process because he did not have a pretrial investigation with confrontation and cross-examination before the filing of the criminal charge.
In this connection we note that plaintiff’s counsel, both in the district court and here, has contended that our per curiam opinion in State v. Open Hearing Investigation, 245 La. 1059, 162 So.2d 565, controls the result that should be reached in the matter at hand.
The district judge was of the opinion that the cited case was not applicable because the Open Hearing Investigation involved a hearing instituted under R.S. 15:17.1 and 15:156 (which have since been repealed) in the nature of a judicial proceeding brought by the Attorney General or district attorney before a judge.
We agree with the conclusions of the district judge on this phase of the case. Since the statutes under which the open hearing was instituted did not prescribe procedural rules for the holding of such a hearing, a majority of this Court felt that certain guidelines should be laid down for conducting the investigation and, since it was a judicial proceeding, we found that all formalities respecting the constitutional and legal rights of an accused in a criminal prosecution were to be observed. The case at bar is different for two cogent reasons.
*1008 First, the hearings provided for are before an administrative commission created by the Legislature, and the Commission’s function to investigate and report to various executive and prosecuting officers, and also the Legislature, is purely administrative in nature. Secondly, since the act itself provides the procedural rules to be followed, this Court is without authority to strike down those procedures in the absence of a finding that they are unconstitutional. Besides, the establishment. of guidelines for the procedure in the Open Flearing Investigation was in essence an advisory view given under our supervisory powers to control proceedings before inferior courts when, from the nature of the case, it is apparent that the legal and constitutional rights of all parties involved require protection.
We also are of the opinion that plaintiff’s claim that,the legislation violates the Fourteenth Amendment to the Constitution of the United States providing “ * * * nor shall any State deprive any person of life, liberty, or property, without due process of .law; * * * ” is equally without merit.. In fact, it is our view that the Legislature .in its effort to comply with the due .process, clause of the Fourteenth Amendment drafted the- rules of procedure for the Commission in strict accordance with the views expressed by the majority opinion of the Supreme Court of the United States in the recent case (1960) of Hannah. v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307.
In that matter, the Court was confronted with the charge that the rules of procedure adopted by the Civil Rights Commission (authorized by Congress in the Civil Rights Act of 1957, 71 Stat. 634, 42 U.S.C. §§ 1975-1975e) were violative of due process on the grounds that the Commission had been invested with power to adjudicate on matters affecting the life, liberty or property of the person under investigation. In determining that the contention was not well founded, the Court held that the Civil Rights Commission was empowered only to investigate allegations that persons had been discriminatorily deprived of their right to vote, and to report its findings to the President and the Congress.
The powers vested in the Commission in the case at bar are comparable and identical in scope with those reposed in the Civil Rights Commission, i.e., the authority to investigate and report. The Supreme Court in the cited case stated:
“As is apparent from this brief sketch of the statutory duties imposed upon the Commission, its function is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone’s civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, *1010 or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual’s legal rights. The only purpose of its •existence is to find facts which may subsequently be used as the basis for legislative or executive action.” (See 363 U.S. p. 440, 80 S.Ct. p. 1514, 4 L.Ed.2d pp. 1320-1321.)
Moreover, in answer to plaintiffs’ claim that confrontation, cross-examination, et ■cetera, were required in order to provide •due process since the Commission’s proceedings might irreparably harm “ * * * those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the ■possibility of criminal prosecutions * * ” (just as plaintiff is claiming in this case) the majority opinion in the Hannah case reasoned that, even if such collateral consequences were to occur (a purely conjectural result) from the Commission’s investigations, “ * * * they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission’s investigative function.” (See 363 U.S. p. 443, 80 S.Ct. p. 1515, 4 L.Ed.2d p. 1322)
Counsel for plaintiff and the trial judge impliedly recognize, as they must, the force of the majority opinion[2] in Hannah v. Larche, in which all of the cases relied on by the trial judge for his opposite view in this case were considered and distinguished.[3] This is made evident from a consideration of the judge’s opinion herein, as well as the argument of counsel for plaintiff, which are based on the concurring opinion of Mr. Justice Frankfurter. In concurring in the result in the Hannah case, Mr. Justice Frankfurter assigned reasons plainly in discord with the view of the majority. This Court not only shares the majority view but, were it otherwise, we would perforce be bound to follow it.
Being of the opinion that the statute does not violate due process, we pass on to a consideration of plaintiff’s other attacks on its constitutionality.
Counsel contends that Section 880.6(C) of the statute is unconstitutional in that it authorizes the Commission to assign all or part of its forces to the State,Police to assist the latter in investigating any viola *1012 bers of the State Police. It is said that when so assigned these investigators have all the power and authority of other members of the State Police. It is said fhat this provision offends Section 15 of Article XIV of the Louisiana Constitution (the Civil Service Law) for as much as it is provided therein that the State Police shall function under the merit system and no one shall become a member of the State Police without first being examined as to his qualifications and being certified as eligible to become such a member.
We find no substance in the complaint. The investigators of the Commission do not become members of the State Police, when temporarily assigned upon the request of the Governor, but are only given the power and authority of members of the State Police while acting under the assignment.
The next contention is that the statute violates Section 16 of Article III of the Constitution, it being asserted that it embraces more than one object and its title is not indicative of its objects.
We think the argument specious. The act has but one object — the creation of a Commission to investigate and find facts relative to the existence and violation of criminal laws in the field of labor-management relations in this State as a result of widespread shutdowns in the construction industry. Every provision of the law is: germane to this single aim and purpose.
Counsel states that there are multiple-objects, i. e., creation of new State Police-Officers, Section 880.6(C); it defines new crimes and misdemeanors, Section 880.14; it grants power to officials of the Commission to give immunity to witnesses as: to both State and Federal criminal prosecutions, Section 880.13; and confers immunity from civil suits for damages in favor of the Commission’s members and' employees, Section 880.16.
We fin’d that all of these provisions are-concomitant to the one aim and single purpose for which the legislation was enacted. Compare Stewart v. Stanley, 199 La. 146, 5 So.2d 531.
Counsel proclaims that Sub-Section 2 of Section 880.18, which provides for an appropriation out of the General Fund of $250,000 for the use of the Commission for its operations is violative of Section 9 of Article IV of the Constitution, which specifies in substance that all appropriations other than those embraced in the General Appropriation Bill shall be made by separate bills “ * * * each embracing but one object.”
This contention hinges on a finding that the act in question contains more than one object and, since we hold that it does not, the appropriation is not violative of the constitutional provision. Compare Stewart v. Stanley, supra.
*1014 Plaintiff’s petition alleges, inter alia, that Section 880.16 of the act denies him due process because it grants immunity to members and employees of the Commission from any suit or liability for damages sustained by a party as a result of the exercise of its functions and obligations in conformity with the provisions of the law. It is declared that this violates Section 6 of Article I of the Louisiana Constitution prescribing that all courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.
The point is insubstantial. The granting of immunity to the members and employees of the Commission does not deny to the courts jurisdiction to provide redress by due process in any suit instituted against these parties and, thus, cannot be regarded as violative of the constitutional provision. Indeed, the question raised pertains only to the validity of the immunity granted and is not in reality an issue in this case.
Finally, counsel declares that the act is unconstitutional as it constitutes an effort to invest the executive branch of the government with powers properly belonging to the judicial branch, violative of Sections 1 and 2 of Article I of our Constitution. Section 1 of Article I is totally without pertinence, and Section 2 of Article I deals with due process. Actually, counsel is really contending that the act is violative of Section 2 of Article II of the Constitution, which deals with the separation of powers of government, and declares that no one of them shall exercise power properly belonging to either of the others.
The short answer to counsel’s proposition is that, contrary to his contention, the act does not confer on the executive branch of the government any powers properly belonging to the judicial branch.
For the reasons assigned the judgment appealed from is reversed and annulled and plaintiff’s suit is dismissed at his costs.

. They are: Oecil Morgan, Chairman of the Commission, William Redmann, Secretary of the Commission, Andrew P. Tugwell, State Treasurer, X B. Lancaster, State Auditor, and John J. MeKeithen, Governor of Louisiana.

. The opinion was subscribed to by six justices. Mr. Justice Frankfurter concurred in the result and Mr. Justice Douglas, with whom Mr. Justice Black concurred, dissented.

. The cases cited by the judge are Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S 123, 71 S.Ct. 624, 95 L.Ed. 817; and Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377. The prevailing opinion in the Hannah ease declares: “Those eases are all distinguishable in that the government agency in each was found by the Court to have made determinations in the nature of adjudications affecting legal rights.”: . ,