Roderick JENKINS

v.

John Julien McKEITHEN, Cecil Morgan, Paul M. Hebert, Floyd C. Boswell, Ralph F. Howe, A. R. Johnson, III, and Burt S. Turner.

Jerry SYLVESTER

v.

Cecil MORGAN, Thomas W. McFerrin, and William V. Redmann.

Civ. A. Nos. 68–38, 68–42.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

June 26, 1968.

J. Minos Simon, Lafayette, La., for plaintiff, Roderick Jenkins.

Dennis R. Whalen, Baton Rouge, La., William C. Bradley, Baker, La., for plaintiff, Jerry Sylvester.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Ashton L. Stewart, Baton Rouge, La., Victor A. Sachse, Baton Rouge, La., for defendants.

Before AINSWORTH, Circuit Judge, and WEST and MITCHELL, District Judges.

PER CURIAM:

These two suits, consolidated for hearing on motion to dismiss, attack the constitutionality of Act No. 2 of the First Extraordinary Session of the Louisiana Legislature for 1967. This Act, LSA–R.S. 23:880.1–23:880.18, provides for the creation and operation of what is known as the Labor-Management Commission of Inquiry. Since injunctive relief is sought in both cases based upon the alleged unconstitutionality of said Act, this three-judge district court was convened pursuant to Title 28 U.S.C.A. §§ 2281 and 2284. A hearing on the motions to dismiss was held on June 6, 1968, and after careful study of the voluminous records and exhaustive briefs of counsel, it is the opinion of this Court that the motions to dismiss must be granted.

The constitutionality of this Act has been challenged previously in the state courts of Louisiana in the case of Martone v. Morgan, 251 La. 993, 207 So.2d 770, wherein the plaintiff was represented by the same attorney now representing the plaintiff Jenkins. At the district court level, Mr. Martone prevailed, but that decision was reversed in a well-written opinion by Mr. Justice E. Howard McCaleb of the Louisiana Supreme Court. We agree with the unanimous opinion of the Louisiana Supreme Court in *Martone* that the case of Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 46 L.Ed.2d 1307, is dispositive of the issues pertaining to the constitutionality of the Act here in question. The Act was properly analyzed by the Louiana Supreme Court in *Martone* when it said:

"The Legislature of 1967, by Act 2 of the Extraordinary Session thereof (R.S. 23:880.1–880.18), created a commission denominated as the 'Labor-Management Commission of Inquiry' to investigate and find facts relating to violations or possible violations of the criminal laws of this State or of the United States arising out of or in connection with matters in the field of labor-management relations. According to the preamble to the act, this Commission of Inquiry was conceived and created to examine the causes for the unprecedented conditions existing in the State in the field of labor-management relations under which, by reason of suspected violations of the State and Federal criminal laws, there has been a shutdown of construction work involving industrial development projects furnishing employment to thousands of persons; that the present conditions vitally affect the public interest and threaten to disrupt the conduct of normal labor-management relations. It was further stated that, in view of the presently existing conditions, the public interest requires that the causes thereof be investigated on a statewide basis as a supplement to assist activities of the district at-

torneys, grand juries and other law enforcement officials and agencies of this State and of the United States.

"In the body of the act, the Commission is created and invested with power to ascertain the facts surrounding and pertaining to any actual or possible violations of the criminal laws relating to, arising out of or connected with problems or disputes in the field of labor-management relations. This power was limited however, the act declaring, '* * * it shall be investigatory and fact finding only * * *', and it was further provided that 'The commission shall have no authority to and it shall make no binding adjudication with respect to such violation or violations; * * *' and 'No findings, conclusions, recommendations or reports of the commission may be used as prima facie or presumptive evidence of the guilt or innocence of any person in any court of law.' Additionally, the act provides that the Commission '* * * shall make and publicize its findings with respect to the question whether or not there is probable cause to believe that there are or have been violations of any criminal law * * *. Copies of its report shall be immediately furnished to the governor, the lieutenant governor, the attorney-general and the legislature.'

"After the membership on the Commission had been duly appointed and the body began to function conformably with the authority vested in it, plaintiff instituted the present suit for an injunction as a taxpayer to have the statute declared unconstitutional on various grounds which will hereinafter be set forth and discussed. The principal attack levelled by the plaintiff is that the act denies him due process as guaranteed by Section 2 of Article I of the Louisiana Constitution and the Fourteenth Amendment to the Constitution of the United States, because the powers vested in the Commission are such that, in their investigations and hearings authorized under the act, plaintiff and/or persons similarly situated are denied assistance of counsel, the right of confrontation, the right of cross-examination of witnesses and the right to compulsory process for their witnesses. The provisions of the act thus assailed have to do with the procedure rules set forth in the act for hearings by the Commission.

\* \* \* \* \* \*

"'* * * we direct our immediate attention to plaintiff's principal attack, and the holding of the trial judge, that R.S. 23:880.1–880.18 denies plaintiff and those similarly situated due process under the State and Federal Constitutions in that it is an agency '* * * which makes determinations in the nature of adjudications affecting legal rights. * * * Its duty in large part is to find that named individuals are responsible for criminal actions and to *advertise* (publicize) such findings and serve as part of the process of criminal prosecution.'

"This ruling, in our opinion, does not conform with the nature of the statute and the purpose for its enactment, for the Labor-Management Commission of Inquiry is not invested with any power to make adjudications affecting legal rights. On the contrary it is, as its provisions expressly set forth, an administrative commission (R.S. 23:880.1) created for the special purpose of investigating and finding facts in relation to violation of existing criminal laws '* * * affecting in a significant manner labor-management relations in one or more areas of the state * * *' in various construction projects which may, in the opinion of the Governor, operate as a serious threat to the economic well-being of the affected area or the State as a whole (R.S. 23:880.5). By Section 880.6(A) it becomes the duty of the Commission, when called on by the Governor to investigate and hold hearings, to receive testimony and documentary evidence and make findings with respect to any actual or probable

violations of criminal laws which relate to the problems or disputes in the field of labor-management relations.

"Under the provisions of Section 880.7(A), the Commission is required to publicize its findings with respect to the question whether or not there is probable cause to believe that there have been violations of any criminal law arising out of the subject matter of its investigation. But it '* * * shall have no authority to and it shall make no binding adjudication with respect to such violation * * *', however it may make such recommendations to the Governor for action as it deems appropriate, and copies of its report are to be furnished to the Governor, Lieutenant Governor, the Attorney General and the Legislature. Nevertheless its findings, recommendations and conclusions may not be used as prima facie or presumptive evidence of guilt or innocence of any person in any court of law.

"It is seen from the foregoing that this administrative body has no right to adjudicate; it merely finds facts and recommends. Hence, it is difficult to perceive that these limited powers impinge upon any constitutional guarantee to which those being investigated are entitled under the Bill of Rights."

The Act here in question was obviously carefully drafted with *Hannah* in mind. Its provisions are carefully tailored along the lines of the statute creating the Commission on Civil Rights, 71 Stat. 634, 42 U.S.C. §§ 1975–1975e, 42 U.S.C.A. §§ 1975–1975e, which was at issue in *Hannah*, and we conclude that the holding there is completely dispositive of the constitutional question here involved. In *Hannah*, the court concluded:

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account. An analysis of these factors demonstrates why it is that the particular rights claimed by the respondents need not be conferred upon those appearing before purely investigative agencies, of which the Commission on Civil Rights is one.

"It is probably sufficient merely to indicate that the rights claimed by respondents are normally associated only with adjudicatory proceedings, and that since the Commission does not adjudicate it need not be bound by adjudicatory procedures. Yet, the respondents contend and the court below implied, that such procedures are required since the Commission's proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions. That any of these consequences will result is purely conjectural. There is nothing in the record to indicate that such will be the case or that past Commission hearings have had any harmful effects upon witnesses appearing before the Commission. However, even if such collat-

eral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative functions." 80 S. Ct. at 1514.

The following quote from *Hannah* is especially applicable here:

"On the other hand, the investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings, and if persons who might be indirectly affected by an investigation were given an absolute right to cross-examine every witness called to testify. Fact finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. Even a person not called as a witness could demand the right to appear at the hearing, cross-examine any witness whose testimony or sworn affidavit allegedly defamed or incriminated him, and call an unlimited number of witnesses of his own selection. This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts." 80 S.Ct. at 1515.

The plaintiffs in the instant cases have not been called as witnesses before the Commission, and to allow them, along with the many others whom they claim to represent, to cross-examine witnesses and present evidence to the Commission would certainly "make a shambles of the investigation and stifle the agency in its gathering of facts." We need but to look at the lengthy pleadings filed herein by plaintiffs to conclude that the court in *Hannah* was right when it said that if investigative hearings were transformed into trial-like proceedings the fact finding agency would be "plagued by the injection of collateral issues that would make the investigation interminable." For example,

the plaintiff Jenkins alleges, inter alia, that the Governor of the State of Louisiana, together with members of the Labor-Management Commission, including the Dean of the Louisiana State University Law School, the Dean of the Tulane Law School, the president of a local bank, and others "have * * * singled out for murder * * * six members of Teamsters Local No. 5 of Baton Rouge, Louisiana." He further alleges that these same gentlemen are using their "great arsenal of power" "to destroy the current power structure of the labor union aforesaid" (Teamsters Local No. 5 headed by one Edward Grady Partin) "and to install a new power structure oriented and subservient to the James R. Hoffa group or clique of the International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America." The plaintiff Jenkins then alleges that these same defendants have caused the arrest of the said Edward Grady Partin on a charge of aggravated assault and that their action "is but a response to the announcement of the candidacy of Honorable Robert F. Kennedy for the nomination for the presidency of the United States by the Democratic Party of the United States, in that the conspirators herein are hoping thereby to induce Edward Grady Partin to recant his testimony heretofore given against James R. Hoffa, to be used as a basis to obtain a new trial for and the consequent release from prison of James R. Hoffa prior to the democratic presidential nomination, so as thereby to thwart the nomination of the said Robert F. Kennedy who, as Attorney General of the United States, ordered and managed the prosecution and conviction of the said James R. Hoffa."

These are but examples of the twenty-one pages of allegations contained in the complaint filed herein by Jenkins. These are the issues that plaintiffs would like to inject into Commission hearings, and these are the issues plaintiffs would like to air out in open court before this tribunal. The entire history of these proceedings convinces this

Court that plaintiffs are far more interested in obtaining a forum in which to publicize their extraordinary allegations than in obtaining an adjudication of issues pertaining to the constitutionality of the Act involved. We decline to allow them to do so here.

A careful reading of the Act shows that plaintiffs' analysis thereof, as set forth in rather strained and extreme terms in the complaints filed herein, is simply not an accurate analysis of the powers, duties, and functions of the Commission created thereby. We conclude instead, that as stated in *Hannah*:

"* * * the purely investigative nature of the Commission proceedings, the burden that the claimed rights would place upon those proceedings, and the traditional procedure of investigating agencies in general, leads us to conclude that the Commission rules of procedure comport with the requirements of due process." 80 S.Ct. at 1519.

■■ While ordinarily it is only the question of the constitutionality of the state statute involved and whether or not injunctive relief in connection therewith should be granted that is before the three-judge court, nevertheless, where other issues are also involved, it is, to large extent, discretionary with the court as to whether or not such other issues will be resolved by the three-judge court. The test is whether or not such issues as would ordinarily be heard by a single-judge court are so interrelated to the three-judge questions as to present one continuous transaction or set of operative facts. Turner v. Goolsby, D.C., 255 F.Supp. 724. In the instant case, in addition to alleging the unconstitutionality of Act No. 2 of the First Extraordinary Session of the Louisiana Legislature for 1967, plaintiff in the Jenkins case also alleges that the various actions of the Commission alleged in his complaint, including those hereinabove quoted, constituted a violation of his civil rights under Title 42 U.S.C.A. §§ 1981, 1983, and 1988. These allegations are so intertwined with the question of the constitutionality of the Act itself that they are proper claims to be considered by this Court.

■ After having determined that the Act itself is constitutional, and that the procedures adopted by the Commission do not do violence to plaintiffs' constitutional rights, we now conclude that plaintiffs have not stated a claim for relief under Title 42 U.S.C.A. § 1981, 1983, or 1988.

Reduced to essentials, the plaintiff, Jenkins, claims that he, who has not been called before the Labor-Management Commission of Inquiry, has nevertheless, as a result of hearings held by that Commission, been charged under four certain bills of information filed by the District Attorney of Iberville Parish, Louisiana, with criminal conspiracy to commit a battery with a dangerous weapon on four different people, all in violation of certain state statutes. He alleges that these charges are false and that he is not guilty. He alleges that he has not been tried as speedily as he would like, even though his own allegations certainly indicate no real violation of his constitutional right to a speedy trial. He alleges that these charges against him resulted from improper actions on the part of the Labor-Management Commission of Inquiry, and that there is no justification whatsoever for them having been filed against him. In other words, he alleges that he is not guilty.

The plaintiff Sylvester merely claims that continued hearings by the Commission while charges are pending against him in Iberville Parish, Louisiana, will make it impossible for him to obtain an impartial jury for the trial of his case, and hence he seeks to have this Court enjoin all further hearings by the Commission so long as these charges against him are pending.

All of these allegations of both plaintiffs are merely potential defenses to the criminal charges pending against them and may be urged if and when they are

brought to trial on those charges. This Court must assume that the courts of Louisiana before whom plaintiffs' cases are pending will perform their duty and will see that the plaintiffs are given a fair and impartial trial and that all of their constitutional and statutory rights are respected. Unless and until the contrary is shown, the allegations made herein by these plaintiffs are premature, and do not state a claim upon which this Court could or should grant relief. As stated by the United States Supreme Court in Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, concerning intervention of the federal courts in cases of this kind:

> "If we were to sanction this intervention, we would expose every state criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, *in the creation of an unfair trial atmosphere*, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." (Emphasis supplied.)

Plaintiffs argue that the teaching of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, is controlling here. We disagree. None of the special circumstances noted in *Dombrowski* appear here. *Dombrowski* held that the statute there under attack operated on its face to abridge the plaintiff's First Amendment right of freedom of expression. The court there found that to force the plaintiff to wait and urge his defenses during his state court criminal

trial would result in "a substantial loss or impairment of freedom of expression" in the meantime. Such is not the case here. *Dombrowski* is inapplicable.

■ In passing, it is noted that the plaintiffs attempt to bring these suits as "class actions," claiming to represent themselves "and all others similarly situated." Suffice it to say that the requirements of Rule 23 of the Federal Rules of Civil Procedure are obviously lacking in these cases, and thus this Court must necessarily conclude that these suits involve only the claims of the individual plaintiffs named herein, and that plaintiffs' attempt to make these actions "class actions" must fail.

For these reasons, defendants' motions to dismiss each of these cases will be granted, and a decree will be entered accordingly.