DREW, J.
I,Elliot B. Stonecipher filed a petition for declaratory and injunctive relief against Caddo Parish (“Parish”), the Caddo Parish Commission (“Commission”), individual Caddo Parish Commissioners (“Commissioners”), Caddo Parish Administrator Woodrow Wilson, and Caddo Parish Director of Finance and Human Resources Erica Bryant.
In his petition, Stonecipher challenged the legality of Parish ordinances relating to participation by the Commissioners in the Caddo Parish Public Employees Retirement System (“CPERS”), their participation in the Parish’s group medical benefits and life insurance plans, salary increases to the Commissioners that were tied to cost-of-living increases to Parish employees, mileage reimbursements to the Commissioners, and the policy of providing each Commissioner with an annual travel allowance of $15,000.
After considering various exceptions raised by the defendants, the trial court maintained Stonecipher’s claim for declaratory relief against the Parish, but dismissed his claim for injunctive relief against the Parish as well as all his claims against the Commission, the Commissioners, Wilson, and Bryant.
Stonecipher has appealed. We reverse the judgment in part, affirm it in part, and remand.
FACTS
Stonecipher alleged in his petition that he is a citizen, property owner, taxpayer, and registered voter of Shreveport and Caddo Parish and is therefore directly affected by the operations, activities, and conduct of the defendants. He contended that the Commission violated the Louisiana 12Constitution, state law, and the Cad-do Parish Home Rule Charter when it passed ordinances in 2000 and 2005 that created CPERS and declared that the Commissioners were unclassified parish employees who were eligible to participate in CPERS. More specifically, he argued that the Commissioners were ineligible to receive these benefits because they were part-time public servants.
Stonecipher also alleged that Section 3-05(D) of the Home Rule Charter, which prohibits a Commissioner from receiving any additional compensation, benefit, or privilege because of his office, was violated by ordinances passed in 2012 and 2013 which made the commissioners and their dependents eligible to participate in the group medical benefits and life insurance plans offered by the Parish to its classified and appointed employees. According to Stonecipher, Section 3-05(D) was also allegedly violated by the Parish’s policy of providing each Commissioner with a yearly travel allowance of up to $15,000.
Stonecipher further alleged in his petition that a 1993 ordinance providing automatic increases to each Commissioner’s salary based on cost-of-living increases granted to Parish employees on an annual basis violated not only Part (D) of Section 3-05, but also Part (B), which governed *1190 how the Commission can change its compensation. Finally, Stonecipher contended that a 1985 ordinance allowing mileage reimbursement for Commissioners was prohibited by Section 3-05(D), as well as by 3-05(C), which prohibits the payment of compensation for mileage for road inspection or travel to and from the courthouse or any similar purpose.
Stonecipher sought a judgment:
[¾* Declaring that the Commissioners have always been part-time employees of the Parish and ineligible to participate in or receive any pension or retirement benefits from CPERS; '
• Declaring that the Commissioners were not entitled to receive any compensation, remuneration, or benefits ' other than their salary proper, and, accordingly, not entitled to receive life and health insurance coverage from the Parish, a travel allowance of $15,000 per year from the Parish, the same cost-of-living increases in their compensation or salaries which are granted to other employees of the Parish on an annual basis, and . the mileage reimbursement in question;
• Enjoining Wilson and Bryant from approving the payment of any additional pension or retirement benefits-through CPERS or the Parish to any of the Commissioners;
• Enjoining Wilson and Bryant from , approving or allowing the , transfer, payment, or provision of any further or additional life and health insurance coverage, subsidies, or benefits, travel allowances, cost-of-living in- ■ creases in wages' or salaries, and mileage reimbursements to any of the Commissioners;
• Enjoining CPERS and the Parish . from paying any additional pension or retirement benefits or credits to any of the Commissioners;
• Enjoining the Parish from transferring, paying, or providing any further or additional life and health insurance, subsidies, or benefits, travel allowances, cost-of-living increases in wages or salaries, and mileage reimbursements to any of the Commissioners;
• Enjoining the Commissioners from accepting, acquiring, or receiving any further or additional pension or retirement benefits or credits from CPERS or the Parish;
• Enjoining the Commissioners from accepting, acquiring, or receiving any further or additional life and health insurance coverage, subsidies, or benefits, travel allowances, cost-of-living increases in wages or salaries, and mileage reimbursements by, from, or through the Parish;
• Directing the Commissioners, Wilson, and Bryant to pay all of the pension and retirement benefits which each Commissioner has received through CPERS' or the Parish; and
• Directing the Commissioners to return all of the compensation, remuneration, and benefits which each Commissioner has received over and above their salaries from life and health insurance benefits from the Parish, travel allowances from the Parish, cost-of-living increases in their compensation or salaries equal to the cost-of-living increases-granted to other Parish employees on an annual basis, and the mileage reimbursements in question.
_JjThe Commission filed the exception of lack of procedural capacity, and the Commission and the Parish filed the exception of no right of action. They conceded Stone-cipher had standing to seek declaratory relief against the Parish only to test the *1191 validity of the ordinances, but argued that the court should dismiss all claims against the Commission and the claims for injunc-tive relief against the Parish. The Commissioners, along with Bryant and Wilson, filed the exceptions of no cause of action and no right of action.
The trial court granted the Commission’s exception of lack of procedural capacity., The court concluded that while the Commission is the legislative branch and governing authority of the Parish under Section 2.02 of the Home Rule Charter, it is not mi juris or juridically independent of the Parish. The court added that the Commission is neither an entity to which the law attributes personality nor a juridical person with the procedural capacity to sue or be sued. ...
The Commission and Parish’s exception of no right of action was sustained because the court regarded Stonecipher’s interest in the lawsuit as insufficient to seek injunc-tive relief. The court concluded that the allegations in Stonecipher’s petition did not sufficiently prove that the actions of these two defendants have or would with certainty increase his tax burden or otherwise unjustly affect him or his property. Although the court recognized that proof of an increased, tax burden is not the only way for a taxpaying citizen to have standing to restrain a public body from allegedly illegal action, Stonecipher did not allege a personal stake in the legality of the ordinances at issue.
|fiThe court also sustained the exception of no right of action filed by the Parish and the Commission regarding the demand to collect sums that may be owed' to the Parish. The court noted that under Section 6-06 of the Home Rule Charter, the right to seek repayment belongs to the Parish. For the same reason, the court sustained the exception of no right of action filed by Bryant, Wilson, and the Commissioners.
Finally, the court sustained the exception of no cause of action filed by the Commissioners on the ground that they took all these contested actions in their official capacities and as the result of ordinances passed by the Commission, even if the ordinances and polices are subsequently declared unconstitutional. The court sustained Bryant and Wilson’s exception of no cause of action because Stonecipher conceded that he was not asserting a cause of action against them in connection with the passage' and adoption of the ordinances at issue.
Stonecipher applied for a supervisory writ with this court. He also later filed a motion for devolutive appeal. This court noted that the judgment had been designated as a final and appealable judgment under La. C.C.P. art. 1915(B), and that Stonecipher’s notice of intent to seek writs was timely as a motion for appeal. Accordingly, this court granted the writ for perfection as an appeal.
On appeal, Stonecipher argued that the trial court erred in © sustaining the Commission’s. exception of lack of procedural capacity; (ii) sustaining the Parish and Commission’s exception of no right of action and dismissing his claims for declaratory relief against the Commission and his claims for injunctive relief against the Parish and the Commission; (iii) sustaining the Parish and Commission’s exception of no cause of action lfiand/or- no right of action and dismissing his claims for restitution or return of the funds that were allegedly illegally paid; (iv) -sustaining the Commissioner, Bryant, and Wilson’s exception of no cause of action and dismissing the claims, against them; and (v) sustaining the exception of no right of action by the Commissioners, Bryant, and Wilson, and dismissing his claims- for restitution or return of funds that were allegedly illegally paid.
*1192 DISCUSSION

The Commission as a defendant

The Commission contends that not only does the Commission lack procedural capacity, but also the Parish is the real party in interest and is the entity against which Stonecipher is seeking relief, which makes the Commission an unnecessary defendant and leads to a waste of resources for the Commission to remain in the case.
La. C.C.P. art. 1880 provides, in part:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard.
Lack of procedural capacity is a dilatory exception which tests a party’s legal capacity to bring an action or to have one brought against it. Dejoie v. Medley, 41,333 (La.App. 2 Cir. 12/20/06), 945 So.2d 968. An entity must qualify as a juridical person to have the capacity to be sued. Id.
In Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La. 3/21/94), 634 So.2d 341, the supreme court adopted a functional approach for determining whether a political subdivision is a separate and distinct juridical person. Dejoie, supra. The supreme court stated:
|7The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.
Roberts, 634 So.2d at 346-7.
The Commission concedes that the Home Rule Charter is silent about the Commission’s capacity to sue or be sued. Section 2-02 of the Home Rule Charter states:
The plan of government provided by this Home Rule Charter for Caddo Parish shall be known as the “commission-administrator” form of government. It shall consist of an elected commission which shall be called the Caddo Parish Commission and shall constitute the legislative branch of the parish government, and a parish administrator who shall be the chief executive officer and head of the executive branch of the parish government.
Regarding the general powers of the Commission, Section 2-04 of the Home Rule Charter states:
Except as otherwise provided by this Charter, the parish shall continue to have all the powers, rights, privileges, immunities and authority heretofore possessed by Caddo Parish under the laws of the state. The parish government shall have and exercise such other powers, rights, privileges, immunities, authority and functions not inconsistent with this Charter as may be conferred on or granted to a local governmental subdivision by the constitution and general laws of the state, and more specifically, the parish government shall have and is hereby granted the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not denied by this Charter, or by *1193 general law, and which is not inconsistent with the constitution.
Section 2-07 of the Home Rule Charter defines “parish government” as meaning “all governmental departments, agencies or functions provided 18under this Charter or other applicable law for Caddo Parish and all such governmental departments, agencies or functions shall be under the jurisdiction of the Caddo Parish Commission.”
In Heck v. Lafourche Parish Council, 2002-2044 (La.App. 1 Cir. 11/14/03), 860 So.2d 595, unit denied, 2004-0067 (La. 3/19/04), 869 So.2d 837, the appellate court disagreed with the argument that the La-fourche Parish Council was not a juridical entity against which a judgment could be rendered. The court noted that under the Lafourche Parish Home Rule Charter, the Council was the governing authority of Lafourche Parish, and it was authorized to enter into contracts affecting that Parish. Therefore, it was a juridical entity for the purposes of being sued for the breach of a contract it was authorized to confect.
In an earlier case, the Third Circuit concluded that the Lafayette City Council lacked the procedural capacity to sue or be sued because it was not an additional and separate government unit with the power to sue on its own behalf as it was a part of the greater juridical entity known as the City of Lafayette. Even though the Lafayette Home Rule Charter was silent on the question of whether the City Council could sue or be sued, the court noted that the Charter, which granted broad powers to the Council, restricted its legal capacity to exercise those powers by establishing it as the legislative branch. City Council of City of Lafayette v. Bowen, 94-584 (La.App. 3 Cir. 11/2/94), 649 So.2d 611, writ denied, 94-2940 (La. 1/27/95), 650 So.2d 244. The court went on to state that merely because the City Council was treated as a separate entity for the purposes of defending several lawsuits did not establish it as a juridical person.
|9We observe that there have been prior cases where the Caddo Parish Commission was named as a defendant but did not raise the exception of lack of procedural capacity. See Romero v. Caddo Parish Comm’n, 48,434 (La.App. 2 Cir. 11/27/13), 129 So.3d 807, writ denied, 2013-3006 (La. 2/28/14), 134 So.3d 1180, and Chesapeake Operating, Inc. v. City of Shreveport, 48,608 (La. 1/29/14), 132 So.3d 537, writ denied, 2014-440 (La. 6/20/14), 148 So.3d 176.
Stonecipher points out that Louisiana courts have held that police juries have the right to sue and be sued. In Police Jury of La Salle Parish v. Police Jury of Catahoula Parish, 145 La. 1053, 83 So. 250 (1917), the supreme court equated a police jury to a parish board or commission exercising public power and administering public functions. After noting the precursor to today’s La. R.S. 33:1236(17), which concerns the powers of parish governing authorities and gives police juries and other parish governing authorities the power to sue for reimbursement for the cost of repairs to the roads and levees, the supreme court stated that as far as .it knew, no general authority to sue and be sued has ever, in specific terms, been conferred on the police juries. Nevertheless, the supreme court added that counties are classified as quasi-corporations or involuntary political civil divisions that are recognized as having the privilege of appearing in court. The supreme court continued:
In this state, such powers as are usually exercised by counties have always been vested in the police juries, as the representatives of the parishes. They, by virtue of the authority conferred upon them and not directly upon the parishes, enact the ordinances required in the administration of the local government, levy and collect the parish taxes, and *1194 contract for the erection of the parish courthouses, jails, and other buildings, the ownership of which is vested in the parishes, and for that reason, no doubt, and the further reason that (save as has been Instated) the right to sue and be sued is not specifically vested in either the. parishes or the police juries, that right has generally been exercised by the police juries, for the parishes, though, now and then, cases will be found in which the parishes sue and are sued in their own names.
Police Jury of La Salle Parish, 145 La. at 1063, 83 So. at 253.
Of particular interest to this court regarding whether the parish or a parish commission should be the party to á suit, the supreme court stated:
It would appear to us simpler and more logical if this suit had been brought in the name of the parish in behalf of which the claim is made and against the parish which is the real debtor; but the jurisprudence of a century sanctions the manner in which it has been brought, and we find no sufficient reason for holding it to be unauthorized. The police jury, according' to that jurisprudence, being competent to bring the- suit, and it having been brought in its- name, it is presumed, in the absence of a challenge, under oath, of the authority of the counsel by whom it was brought, that he was properly authorized to that effect.
Police Jury of La Salle Parish, 145 La. at 1064, 83 So. at 254.
We note that while in his prayer for relief Stonecipher seeks a judgment against the Commission, he never specifically states the relief that he seeks against it. Although it was redundant for Stoneci-pher to name both the Parish and the Commission as defendants in this matter, that is not the issue before, us. Rather, the issue -is whether the Commission has a lack of procedural capacity. We conclude that the Commission possesses procedural capacity. Accordingly, the trial court erred in granting the exception of lack of procedural capacity and dismissing the Commission.

Right of action to seek injunctive relief

The exception of no cause of action and the exception of no right of action both present questions of law. Therefore, a court conducts a de novo review "of the trial court’s action on these exceptions. Waggoner v. America First Ins., 42,863 (La.App. 2 Cir. 1/16/08), 975 So.2d 110. Our supreme 11court has explained the difference between the exceptions of no cause of action and no right of action:
Although these two exceptions are often confused or improperly combined with the same exception, the peremptory exceptions of no right of action and no cause of action áre separate and distinct. This court has recognized that one of the primary differences between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in' an exception of no cause of action is on whether the law provides a remedy against the particular defendant. The function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation.
In contrast, an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. The exception is triable on *1195 the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true. In reviewing a district court’s ruling sustaining an exception of no cause of action, appellate courts conduct a de novo review because the exception raises a question of law and the district court’s decision is based only on the sufficiency of the petition. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial.
Citations omitted. Badeaux v. Southwest Computer Bureau, Inc., 2005-0612 at pp. 6-7 (La. 3/17/06), 929 So.2d 1211, 1216-7.
A portion of the injunctive relief sought by Stonecipher involved restraining Bryant, Wilson, and the Parish from providing additional allegedly illegal benefits to the Commissioners, and the Commissioner^ from accepting those benefits. La. C.C.P. art. 681 requires that except as otherwise provided bylaw, a person bringing an action have, a real and actual interest which he asserts. Granting the exception of no right of action, the trial court concluded that Stonecipher’s interest in the lawsuit was insufficient to seek injuner five relief., In reviewing this ruling, it is critical to consider how the supreme court has examined the.issue of standing in suits against public bodies for injunctive relief.
In League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La. 1980), the supreme court upheld the dismissal of a writ, of mandamus requiring the defendants to carry out certain government functions, namely the raising of taxes. In concluding that the plaintiffs had no right of action, the supreme court noted the plaintiffs were not seeking to restrain an increase in taxes, but were seeking to enforce a statute and .compel an increase in taxes.
In Louisiana Associated Gen’l Contractors, Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354 (La. 1991), individual contractors and a contractors’ association sued for declaratory relief and to enjoin the school board from requiring a prevailing wage provision in its public work contracts. Discussing whether the plaintiffs had standing to bring the suit, the supreme court stated:
Our jurisprudence recognizes the right of a taxpayer to enjoin unlawful action by a public body. Under Louisiana law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). The. fact that the taxpayer’s interest may be small and insusceptible of accurate determination is not sufficient to deprive him of the right. Id.
I isln League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980), we refined our previous standard and held a taxpayer will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the . interest of the public at large.We specifically stated, “Without a showing of . some special interest in the performance sought of a public board, officer or .commission which is separate and distinct *1196 from the interest of the public at large, plaintiff will not be permitted to proceed.” Id. at 447.
The requirement that a plaintiff in a mandamus proceeding demonstrate a “special interest” in the action was imposed to insure a fair presentation and development of the issues by truly adverse parties. Without a showing of such a personal and special interest in mandamus cases, we feared interference by the judiciary would surpass the authority allocated by the tripartite system. In League of Women Voters we were careful to point out that unlike a citizen attempting to compel the performance of a public duty, a citizen attempting to restrain unlawful action by a public entity is not required to demonstrate a special or particular interest distinct from that of the public at large. Consequently, taxpayer plaintiffs seeking to restrain action by a public body are afforded a right of action upon a mere showing of an interest, however small and indeterminable. See Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Stewart v. Stanley, supra.
The plaintiffs herein seek declaratory and injunctive relief. They clearly are attempting to restrain action by the Cal-casieu Parish School Board. Consequently, in order to have standing they are not required to demonstrate a personal or special interest which is separate and distinct from the interest of the general public. They must merely assert a real and actual interest in the action before we will entertain their suit.
Id., 586 So.2d at 1357-8.
The supreme court went on to note that the plaintiffs’ allegations that they were residents and taxpayers of Calcasieu Parish were not enough to sufficiently prove that the school board’s action would, with certainty, increase their tax burden. However, as further noted by the court, proof of an increased tax burden was not the only way for a taxpaying citizen to seek judicial relief to restrain a public body from allegedly unlawful action. The 114individual contractors had an interest in restraining the school board’s action because they were bidding on the contracts. The contractors’ association also had a sufficient interest to bring the suit because not only did it desire to maintain the integrity of the public bid process, but the individual contractors were its members, and the association could lose membership dues if its members were deprived of profits from public works projects.
In Ralph v. City of New Orleans, 2006-0153 (La. 5/5/06), 928 So.2d 537, the plaintiffs sought a declaratory judgment that the New Orleans City Council acted without authority in enacting a Domestic Partnership Registry, and in extending health insurance and other benefits to registered domestic partners of city employees. The plaintiffs also sought to enjoin the enforcement of the registry policy and related ordinances. The trial court granted the exceptions of no cause of action and no right of action. The court of appeal reversed the granting of the exception of no cause of action, but affirmed the granting of the exception of no right of action.
Finding a right of action, the supreme court concluded that the plaintiffs had standing to challenge the extension of benefits because they demonstrated an interest, regardless of how small and indeterminable. The plaintiffs had alleged that New Orleans was spending tax money to pay benefits for at least one person who had qualified as a domestic partner. The supreme court considered that spending tax money, no matter how minuscule its effect on the city’s budget, clearly affected the public fisc. Therefore, when a plaintiff attempts to restrain action by a public body that affects the public fisc, that plain *1197 tiff has' an interest, however small and indeterminable, which is sufficient to afford him a right of action. In addition, the supreme court found that the plaintiffs had standing to 11fichallenge the registry ordinance because the ordinance was intertwined with the extension of benefits.
In Retired State Employees Ass’n v. State, 2013-0499 (La. 6/28/13), 119 So.3d 568, the supreme court upheld the finding that the plaintiffs had standing to seek a declaratory judgment and permanent injunction against the implementation of a change in retirement provisions by the legislature. The plaintiffs alleged that as Louisiana taxpayers, they would be harmed by the change in retirement provisions that increased state expenditures and were passed in contravention of the Louisiana Constitution. The trial court denied the exceptions of no right of action and no cause of action, and the matter proceeded to trial. The defendants challenged on appeal the district court’s finding that the plaintiffs had standing to seek the declaratory relief. They asserted that the Louisiana Associated Gen’l Contractors case required the plaintiffs to demonstrate a provable impact on their tax burden and to show that the disputed legislation increased their individual tax burden with certainty. After noting that the plaintiffs produced evidence at trial that the legislation was predicted to have an actuarial cost resulting in an increase in Louisiana’s expenditures, the supreme court cited Ralph v. City of New Orleans, supra, for the position that the spending of tax money, no matter how miniscule the effect would be on the state budget, clearly affected the public fisc. Therefore, according to the supreme court, those plaintiffs had set forth a sufficient real and actual interest in the cause of action.
In Hudson v. City of Bossier, 36,213 (La.App. 2 Cir. 8/14/02), 823 So.2d 1085, writ denied, 2002-2383 (La. 11/27/02), 831 So.2d 279, the plaintiffs filed suit to challenge the legality of an agreement between Bossier City and riverboat casinos to not levy a per-admission boarding tax. The |! fitrial court granted the exception of -no right of action, reasoning that the plaintiffs had no standing to challenge the legality of the agreement because they had not shown that the agreement resulted in an increased tax burden. This court reversed, concluding that the plaintiffs had at least a small and indeterminable interest in seeing that their elected representatives obey the law and not enter into illegal contracts in matters relating to the public fisc. This court added that the illegal surrender of the statutory right to tax riverboats could not be considered a benefit to the public fisc.
Stonecipher. alleged in the first paragraph of his petition that he is a resident and domiciliary of Caddo Parish, resides at a home and lot located in Caddo Parish, pays ad-valorem taxes to Caddo Parish on that lot and home, and votes in elections held by Caddo Parish. In the next paragraph, he further alleged that as a citizen, property owner, taxpayer, and registered voter of both Shreveport and Caddo Parish, he is directly affected by the operations, activities, and conduct of the defendants.
The expenditure of tax revenues to pay for the benefits extended to the Commissioners would clearly affect the public fisc. Stonecipher, as a taxpayer in Caddo Parish, has an interest, however small and indeterminable, to restrain action that is allegedly illegal by the Parish. Moreover, as a taxpayer and voter in Caddo Parish, Stonecipher has an interest in seeing that his elected representatives obey the law and not extend illegal benefits to the Commissioners. Therefore, Stonecipher had standing to seek an injunction stopping the *1198 payment and receipt of the benefits at issue.

Mandatory injunction

In addition to seeking a prohibitory injunction, Stonecipher also sought a mandatory injunction involving the recovery of the allegedly illegal |17benefits that' had already been received. Stonecipher argued that he has standing to assert a claim directing the Commission, Commissioners, Bryant, and Wilson to reimburse the. Parish. He contended that under La. R.S. 14:134, each Commissioner, Bryant and Wilson had a duty not to misappropriate or wrongfully take Parish funds. The Commissioners, Bryant, and Wilson counter that Stonecipher has no right of action to obtain a judgment ordering them to pay any money to the Commission or the Parish.
■ It is clear under the rationale from ■League of Women Voters of New Orleans, supra, and subsequent cases that a taxpayer such as Stonecipher will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large. Stonecipher has not demonstrated that he has the requisite special interest to seek the recovery of the funds.
Stonecipher contends that League of Women Voters of New Orleans is inap-posite because he is not seeking mandamus action, but is actually asserting a mandatory injunction. The Parish and Commission argue that while a writ of mandamus should not be confused with a mandatory injunction, the reasoning of League of Women Voters applies to a mandatory injunction that seeks to compel the performance of a public duty. We agree with the Parish and the Commission. Sto-necipher’s mandatory injunction is similar to a writ of mandamus in the. sense- that he is seeking to compel performance by the defendants, thereby requiring him to show the required interest that is separate and distinct from the interest of the general public.
| isStonecipher also contends that Section 6-06(A) of the Home Rule Chárter provides him with a basis to .seek the recovery of the funds. It states, in part:
Any authorization of payment or incurring of obligation in violation of the provisions of this Charter shall be void and any payment so made illegal; such action shall be'cause'for removal of any official, officer or employee who knowingly authorized or made such payment or incurred such obligation or who caused such payment to be authorized or made or obligation to be incurred. Such persons shall also be liable to the parish government for any amount so paid.
We disagree with Stonecipher. Nowhere in Section 6-06(A) does it provide for the right of a private citizen or taxpayer to step into the shoes of the Parish and recover illegal payments. In addition,.Stone-cipher has not shown that the Parish has granted him authority to file suit on its behalf.
Accordingly, the trial court did not err in sustaining the exception of no right of action as to Stonecipher’s plea for a mandatory injunction.

Commissioners as defendants

The trial court sustained the Commissioners’ exception of no cause of action because it concluded that all the actions they took were in their official capacities and were the result of ordinances passed by the .Commission.
Stonecipher contends that the actions taken by the Commissioners in passing the ordinances and the actions taken pursuant to them were not official acts but were ultra vires as they were done in violation of the law. He also contends that some of the actions that the Commissioners are *1199 being sued about have nothing to do with passing legislation and do not concern actions that were part of the formal legislative process or taken in the course and scope of their official duties.
liaThe Commissioners argue that Stone-cipher is challenging actions taken by them in their official capacities rather than in their individual capacities. Therefore, according to the Commissioners, the real party in interest is the Parish, and by naming the individual commissioners, Sto-necipher is merely restating his claims against the Parish: They further argue that although Stonecipher claims the actions of the Commissioners could not have been in their official capacities because the actions were illegal, he has not identified any actions taken by an individual commissioner that were outside the course and scope of his duties as a commissioner, nor did he allege that any commissioner' acted in bad faith or with malice.
The relief sought by Stonecipher in his prohibitory injunction against the Commissioners did not involve actions taken by them in their legislative roles as Commissioners. Instead, it- involved their roles as recipients of the allegedly illegal benefits. Nevertheless, they were still in their official capacities. as • Commissioners when they began receiving the benefits at issue. Accordingly, Stonecipher has no cause of action against the individual commissioners in this matter.
This conclusion does not impact the reach of any prohibitive injunctive relief that Stonecipher may obtain against the Commission and the Parish as the Commissioners would obviously no longer receive benefits that the Commission or Parish would be enjoined from paying. We agree with the Commissioners that Stone-cipher is merely restating his claims against the Commission and the Parish against the Cpmmissioners. It is unnecessary for him to seek prohibitory injunctive relief against the Commissioners when the prohibitory injunctive relief sought against the | «^Commission and the Parish also involves the curtailment of payment of allegedly illegal benefits and compensation. ■
Finally, this result does not'restrain the ability of the Commission or the Parish to recover money under Section 6-06 of the Home Rule Charter from the Commissioners-in the event that Stonecipher is successful in his claim for declaratory relief that any or all of the benefits and compensation were illegal.
For the foregoing reasons, the trial court did not err in granting the Commissioners’ exception of no cause of actiori.

Bryant and Wilson

The trial court sustained Bryant and Wilson’s exception of no cause of action because Stonecipher conceded that he was not asserting a cause of action against them in connection with the passage and adoption of the ordinances at issue. '
Stonecipher argued that he had the right to assert claims against Bryant and Wilson because their actions in facilitating the allegedly illegal benefits to the Commissioners make them liable under Section 6-06 for the return of the funds at issue. He asserts that he is not making any claims against them based on their participation in the passage or- adoption of the ordinances, but rather their participation in developing the budget and approving the transfer of Parish funds to provide the allegedly illegal benefits. He argues this makes Bryant and Wilson liable for the return, reimbursement, and/or repayment of the funds at issue.
This court has already concluded that the trial court did not err in finding that Stonecipher had no right of action to seek the return or repayment of the funds in question. The only remaining claim that Bryant |81and Wilson could arguably re *1200 main subject to would be the prohibitory injunction claim, which is properly directed at the Parish or the Commission. Wilson serves at the pleasure of the Commission, and Bryant serves at the pleasure of Wilson. Neither one has the power to enact or to modify ordinances. Therefore, the trial court did not err in maintaining the exception of no cause of action and dismissing the claims against Bryant and Wilson.
CONCLUSION
We reverse the judgment insofar as it dismissed the claims for prohibitory in-junctive relief against the Parish, and the claims for declaratory judgment and prohibitory injunctive relief against the Commission. In all other respects, the judgment is affirmed.
Plaintiff' and the individual defendants are to bear their own costs; costs of Caddo Parish Commission and Caddo Parish are not assessed, La. R.S. 13:4521.
JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, DREW, MOORE and STONE, JJ
Reheating denied.
BROWN, J., would grant rehearing.