Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,296-CA
No. 53,297-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 53,296-CA

SHARON DENISE MURPHY
SANDERS, CURATOR FOR
KEVIN THURSTON COLVIN
Plaintiff-Appellant

versus

JOY MARIE HUFF DUPREE
Defendant-Appellee

No. 53,297-CA

SHARON SANDERS FOR
KEVIN COLVIN
Plaintiff-Appellant

versus

JOY DUPREE
Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court Nos. 77280 and 77241

Honorable Michael O. Craig, Judge

* * * * *

MELANIE F. McCULLOUGH                    Counsel for Appellant


ROBERT M. HANNA                          Counsel for Appellee




* * * * *


Before MOORE, PITMAN, and THOMPSON, JJ.

**THOMPSON, J.**

This matter arises from the 26th Judicial District Court, Webster Parish, Louisiana, the Honorable Michael Craig presiding, on the issue of whether authority and capacity of a curator to institute and pursue a divorce proceeding on behalf of an interdict are generally conferred by the applicable articles on curatorship and tutorship.[1]

In 2014, Kevin Colvin ("Colvin") and Joy Dupree ("Dupree") were married. In 2018, by way of authority purportedly granted by a power of attorney, Sharon Sanders ("Sanders") instituted a petition for protection from abuse from Dupree on behalf of Colvin. Subsequently, Sanders filed on behalf of Colvin a petition for divorce from Dupree. During this same general time period an interdiction proceeding for Colvin was instituted, with Colvin ultimately being interdicted and his son being appointed as initial curator. Colvin's son permitted and the trial court approved Sanders to substitute as curator for Colvin. In response to the filing of the petition for divorce, Dupree filed exceptions of no cause of action, no right of action, and lack of procedural capacity, which were maintained by the trial court. Sanders now appeals the trial court's judgment. For the following reasons, we reverse the peremptory exceptions of no right of action and no cause of action, and we vacate and remand with instructions as to the dilatory exception of lack of procedural capacity.

---

[1] The question of whether an interdict can institute divorce proceedings through a curator has previously been on appeal before this Court. *See, e.g.*, *Treadwell v. Treadwell*, 41,130 (La. App. 2 Cir. 06/28/06), 935 So. 2d 740; *Cory v. Cory*, 395 So. 2d 937 (La. App. 2 Cir. 1981). However, in those cases, the Court pretermitted the issue before us today or reversed on separate grounds.

## FACTS

Kevin Colvin married Joy Dupree in 2014. Colvin had apparently been previously married and fathered children from that prior marriage. On August 1, 2018, Sanders, under a power of attorney from Colvin, filed a petition for protection from abuse on behalf of Colvin against Dupree. The protective order alleged Dupree was not properly taking care of Colvin, was harassing caregivers, and was running up credit card bills that were in Colvin's name only. An *ex parte* temporary restraining order was issued. Soon after, on August 14, 2018, Sanders filed a petition for divorce on behalf of Colvin against Dupree. Sanders' ground for divorce was that Colvin and Dupree were separated for a period of time in excess of 180 days. La. C.C. art. 102. The matters were consolidated and set for hearing.

At the September 25, 2018, hearing, the trial court ordered an attorney be appointed to interview Colvin and requested a mental health examination to determine whether Colvin should be interdicted. The trial court also appointed a curator ad hoc and allowed the temporary restraining order to expire, placing a no contact order prohibiting Dupree from contacting Colvin or Sanders. The matter was reset for trial.

On December 18, 2018, at the pretrial hearing, the trial court opined that it did not believe Sanders had the authority nor was she, as agent from a purported power of attorney, the proper party to bring a divorce action on behalf of Colvin. The trial court also noted that an interdiction proceeding had been instituted against Colvin. On January 7, 2019, Colvin was placed under temporary interdiction and his son, Richard Colvin, was appointed as

2

a temporary curator. The interdiction proceeding was apparently not consolidated with the protective order and divorce actions.[2]

On January 8, 2019, the trial court signed a judgment allowing Dupree to return to the matrimonial domicile, but prohibited any harassment of Colvin, his caretakers, or family members, and further prohibited removal of any of Colvin's property. That same day, Dupree filed exceptions of "no cause of action/no right of action" and lack of procedural capacity claiming that Sanders, under a power of attorney, lacked the procedural capacity to proceed with an action for divorce on behalf of Colvin.

On January 23, 2019, Richard Colvin filed a petition to substitute himself, in his capacity as curator, as plaintiff in place of his father in the divorce proceeding against Dupree. Richard Colvin also filed a *Rule for Use and Possession of Former Family Home and Separate Property*, claiming that the matrimonial domicile was the separate property of his father, Colvin, and that Dupree and Colvin had entered into a prenuptial agreement. Richard Colvin also sought return of the separate property of Colvin's that Dupree allegedly removed from the residence.

On March 22, 2019, Richard Colvin, as temporary curator, filed an opposition to Dupree's exceptions stating that any issue with the right of action had been cured with his petition to substitute himself as Colvin's curator as plaintiff.

The trial court heard arguments on the divorce and pending exceptions on April 2, 2019. The trial court first noted that Colvin had been interdicted,

---

[2] The record reflects that the interdiction proceeding against Colvin was filed in the 26th Judicial District Court, Webster Parish, under Docket No. 16,799. The record before us is void of that proceeding.

3

thus releasing the curator ad hoc in connection with this matter. Counsel for plaintiff then moved to have Sanders appointed as curatrix and substitute her as plaintiff on Colvin's behalf, which the court granted. The court then sustained the exceptions in favor of Dupree, holding the curatrix lacked procedural capacity to institute and pursue a divorce proceeding on behalf of the interdict, Colvin. This appeal ensued.

## DISCUSSION

The looming question in this matter is does a person, even if interdicted, lose the right seek a divorce. If a person is interdicted, the proper party to file any such action would be the curator in the capacity as curator, just as a curator would to seek to enforce or protect any other rights of an interdict. The determination of interdiction is not in and of itself a final determination of whether the interdict retains the requisite lucidity to express a desire to obtain a divorce. If he retains requisite capacity, even if in lucid intervals, and expresses such a desire, his curator would necessarily have to be the person to initiate such an action. The challenge in this matter is that there is scant jurisprudence and little statutory direction which delves into such legal rights. The ability of an individual interdict would be specific to that interdict, and perhaps a contradictory hearing would be necessary to reach the ultimate conclusion of whether the interdict has initiated the desire to obtain a divorce of his free will.

A curator may act only within the authority granted. The Code of Civil Procedure, and Louisiana jurisprudence, sets forth that authority. Most relevant to the inquiry before us is La. C.C.P. art. 4566, which provides:

> A. *Except as otherwise provided by law, the relationship between interdict and curator is the same as that between minor and tutor. The rules provided by Articles 4261 through*

4

***4269, 4270 through 4272, 4301 through 4342, and 4371 apply to curatorship of interdicts.*** Nevertheless, provisions establishing special rules for natural tutors and parents shall not apply in the context of interdiction.

B. A curator who owns an interest in property with the interdictor who holds a security interest or lien that encumbers the property of the interdict may acquire the property, or any interest therein, from the interdict upon compliance with Article 4271, with prior court authorization, and when it would be in the best interest of the interdict. Except for good cause shown, the court shall appoint an independent appraiser to value the interest to be acquired by the curator.

C. A curator may accept donations made to the interdict. A curator shall not have donations of the property of the interdict except as provided by law.

D. A curator may place the property of the interdict in trust in accordance with the provisions of Article 4269.1. The trust shall be subject to termination at the option of the interdict upon termination of the interdiction, or if the interdict dies during the interdiction, at the option of his heirs or legatees.

E. A curator shall inform the undercurator reasonably in advance of any material changes in the living arrangements of the interdict and any transactions materially affecting his person or affairs.

F. A curator shall not establish or move the place of dwelling of the interdict outside this state without prior court authorization.

G. A curator may not consent to an abortion or sterilization of the interdict without prior court authorization.

H. Neither a curator nor a court shall admit or commit an interdict to a mental health treatment facility except in accordance with the provisions of R.S. 28:50 through 64.

I. A curator appointed in an order of temporary interdiction shall have no authority to admit the defendant to a residential or long- term care facility in the absence of good cause shown at a contradictory hearing.

J. A curator shall allow communications, visitation, and interaction between an interdict who is over the age of eighteen years and a relative of the interdict by blood, adoption, or affinity within the third degree, or another individual who has a

relationship with the interdict based on or productive of strong affection if it would serve the best interest of the interdict.

These rules, generally, are those that apply to tutorship and the management of an interdict's affairs. La. C.C.P. arts. 4566, comment (a), 4261-69, 4270-74, 4301-42, 4371. Likewise, comment (e) to La. C.C. art. 392 defines the term "affairs" as interests of the interdict that are distinct from his person. This term includes the interdict's estate, property, and business, but may include other interests as well. La. C.C. art. 392, comment (e).

In essence, Sanders' argument to the trial court, and now to this Court, is that if a curator acts in place of the interdict, then who besides that court-appointed curator would be the proper party to assert the legal right of an interdict to obtain a divorce? While such an argument may have merit if the trial court had granted that authority after a contradictory hearing, that is not the case before us. Rather, we are left to determine if the right to institute a divorce proceeding is found within the general provisions of the applicable articles dealing with curatorships and tutorships. We can find no support for such an argument under the currently existing facts.

In her appeal, Sanders asserts two errors by the trial court:

1. **The trial court erred in granting Dupree's Dilatory Exception of Lack of Procedural Capacity;**

2. **The trial court erred in granting Dupree's Peremptory Exception of No Cause or Right of Action.**

In her first assignment of error, Sanders asserts that the trial court erred in granting Dupree's dilatory exception of lack of procedural capacity. Specifically, Sanders claims that a curator is a proper plaintiff to sue to enforce the right of an interdict and that the two should be viewed as

"legally inseparable." La. C.C.P. art. 684; *Converse v. Dicks*, 179 La. 339, 154 So. 17 (1934). Dupree argues that the same principle that prohibits marriage by procuration, or through power of attorney, should apply in this situation. La. C.C. art. 92. Dupree maintains that the law governing interdiction authority for a curator focuses on the preservation of the assets and property of the interdict's estate, not personal matters such as marriage.

Interdiction is a judgment by which a civil court takes away to varying degrees a person's right to administer his person and property. La. C.C. art. 389. Under Louisiana jurisprudence, interdiction is considered one of the most powerful involuntary legal regimes that may be applied to a person. Its effect has been described as a "radical displacement of legal identity: it nullifies the interdict's own actions, and transfers his decision-making power to a surrogate." Jeanne Louise Carriere, *Reconstructing the Grounds of Interdiction*, 54 LA. L. REV. 1199, 1199 (1994). Similarly, according to the Louisiana Supreme Court, "[t]here is nothing which [an interdict] is capable of doing legally . . . . His curator is substituted for him, is the human agency through whom the interdict acts, and the two are legally inseparable." *Converse*, *supra*.

The interdiction judgment entails the placing of the interdict under tutorship of a curator. La. C.C. art. 392; La. C.C.P. 4566; 1 MARCEL PLANIOL, TRAITÉ ÉLÉMENTAIRE DE DROIT CIVIL pt. 2, no. 2038 (George Ripert ed., 12th ed. 1939), *translated in* 1 TREATISE ON THE CIVIL LAW 211 (La. State Law Inst. trans., 1959). The curator's duty is to represent the interdict in juridical acts and to care for the person or affairs of the interdict. La. C.C. art. 392. A curator may exercise all procedural rights available to a litigant, including the procedural capacity to sue to enforce a right of an

7

interdict. La. C.C.P. arts. 684, 4264. While La. C.C.P. art. 684 suggests a broad scope of powers regarding the curator's ability to sue on behalf of an interdict, Sanders is mistaken on the breadth of that power.

Louisiana's legislature provides insight in to the breadth and scope of authority of a curator over an interdict in La. C.C.P. art. 4566, and provides wide-ranging authority far greater than simply managing the property of the interdict. In the instant matter, we are not simply dealing with managing property. Rather, Sanders is attempting to initiate a legal proceeding to terminate a legal regime which necessarily requires voluntary and intentional action by at least one spouse. Clearly the applicable statutes empowering curators to make life-altering decisions for interdicts are allowed, but **only after seeking and obtaining specific prior court authority after a contradictory hearing**. Curators may exercise for interdicts extraordinary powers granted by the trial court for matters which include:

1. Moving or establishing the place of dwelling of an interdict outside the state of Louisiana (La. C.C.P. art. 4566(F));

2. Consenting to an abortion or sterilization of the interdict (La. C.C.P. art. 4566(G));

3. Admitting or committing an interdict to a mental health facility except in accordance with the provisions of R.S. 28:50 through 64 (La. C.C.P. art. 4566(H)); or

4. Admitting an interdict to a residential or long-term care facility (La. C.C.P. art. 4566(I)).

As such, in the absence of express authority pursuant to the above articles, the issue of authority is in controversy. A determination is necessary as to whether a curator's authority to manage the affairs of an interdict, as defined in La. C.C.P. art. 4566, includes seeking a divorce. In the current matter, Sanders is requesting this Court to expand the authority

8

of a curator to encompass, without specific prior court approval, instituting a divorce proceeding. We believe such an expansion of the limited rights and responsibilities of the general authority extended to curators is not in accordance with the statutory scheme or applicable jurisprudence.

We are unaware of any statutory provision or juridical declaration which expands a curator's role beyond representing the interdict in the administration of his property, which is either not specifically expressed in the statute or granted by a court after a contradictory hearing. In his treatise, French jurist Marcel Planiol clarifies that "[t]he right of action to sue for divorce is essentially personal to the spouses. No other person whatsoever may act. Thus are excluded: . . . . The tutor of the judicially interdicted persons." 1 PLANIOL, *supra*, pt. 1, no. 1180, p. 658-59. While not binding on this Court, Planiol offers Louisiana courts guidance on the intricacies of the Napoleonic Code. Therefore, absent direction from the Louisiana Supreme Court or the legislature to the contrary, we find that a curator cannot sue for divorce on behalf of an interdicted person under the general provisions of authority granted to curators.

The trial court appears to have sufficient grounds to sustain the dilatory exception of lack of procedural capacity under the limited facts presented. When a dilatory exception is granted, La. C.C.P. art. 933(B) authorizes the plaintiff to remove the grounds for the objection by amendment or action, within the delay allowed by the court. As the judgment sustaining the dilatory exception did not include the requisite language providing a time period during which plaintiff could take whatever action it deemed appropriate to remove the exception, the judgment is **vacated and remanded** to the trial court to include such a time period.

9

In her second assignment of error, Sanders asserts that the trial court erred in granting the peremptory exceptions of no cause of action and no right of action. The exceptions of no cause of action and no right of action both present questions of law. *Stonecipher v. Caddo Parish*, 51,148 (La. App. 2 Cir. 04/07/17), 219 So. 3d 1187. Although these two exceptions are often confused or improperly combined, the exceptions are separate and distinct. La. C.C.P. art. 927(5), (6); *Industrial Companies Inc. v. Durbin*, 02-0665 (La. 01/28/03), 837 So. 2d 1207. The primary difference between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 03/17/06), 929 So. 2d 121; *Stonecipher*, *supra*.

The function of an exception of no right of action is a determination of whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. *Badeaux*, *supra*; *Stonecipher*, *supra*. In the present matter, Colvin would certainly have the exclusive right to seek to terminate a legal regime of which he is a member. That right exists in favor of him personally. In contrast, the exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy to anyone based on the facts alleged in the pleading. *Villareal v. 6494 Home, LLC*, 48,302 (La. App. 2 Cir. 08/07/13), 121 So. 3d 1246; *Rangel v. Denny*, 47,381 (La. App. 2 Cir. 08/08/12), 104 So.3d 68. Here, Colvin would have a cause of action to seek a divorce. He

is required to pursue legal remedies through a curator but such a remedy is available to him.

Colvin has both the right and the cause to seek to end his marriage, even if procedurally legal actions must be accomplished by an interdict's curator. As such, the granting by the trial court of the exception of no right of action and the exception of no cause of action is hereby **reversed**.

## CONCLUSION

For the reasons set forth above, the trial court's judgment on the dilatory exception of lack of procedural capacity is vacated and remanded with instructions, and the order granting the peremptory exceptions of no cause of action and the order granting the peremptory exception of no right of action are reversed. Costs of this appeal are assessed equally to Sanders and Colvin.